SECOND DEPARTMENT, AUGUST, 1969

(August 15, 1969)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LESLIE J. MAIZE, JR., Appellant.— Judgment of the County Court, Nassau County, rendered December 9, 1968, and order of said court, dated October 7, 1968, which denied defendant's motion to suppress, affirmed. In our opinion, the County Court properly denied defendant's motion to suppress. Within minutes after receipt of a radio alarm that certain premises in Roslyn Heights had just been burglarized and that a male Negro had been observed leaving the scene, the arresting officer saw defendant, a male Negro, operating a car 2½ blocks from the burgled premises. The time was approximately 5:15 A.M. The observant officer stopped the car and asked defendant to produce his driver's license and registration. Beyond cavil, the officer was justified in detaining defendant briefly for purposes of inquiry (*People* v. *Merola*, 30 A D 2d 963). While waiting for defendant to produce his license and registration, the officer saw a portable television set on the floor in the front of the car. Upon examination of the proffered documents, the officer noted that the license and registration were different and that the license was not the original but a duplicate. Asked whether he had lost his original license, defendant replied that he had not. He could not provide an adequate explanation for the duplicate license. In addition, defendant was evasive in explaining his presence in the area, giving the excuse that he had just dropped off a girl. He was unable to say where. Subsequently, defendant got out of the car to check his rear lights at the officer's request and the officer saw a pair of wet gloves on the front seat. Defendant was in wet stockinged feet and the knees of his trousers were also wet. At this point, the officer placed defendant under arrest. Manifestly, the totality of these circumstances — defendant's proximity to the scene of the burglary, his evasive and unsatisfactory answers to proper police inquiry about his license, his registration and what he was doing in the area at that early morning hour, the officer's own observations of the television set, the wet gloves and the condition of defendant's clothing demonstrate the existence of probable cause for defendant's arrest. Since the arrest was legal, the subsequent and incidental search which uncovered a large sum of cash, jewelry, three wristwatches, clocks and a broken-bladed pocketknife was also legal. Beldock, P. J., Christ, Munder and Kleinfeld, JJ., concur; Hopkins, J. dissents and votes to vacate the judg-

---

* Not published with other decisions of June, 1969, 32 A D 2d 745. [Rep.

ment of conviction, grant the motion to suppress and remand the case for proceedings not inconsistent with his opinion herein. The testimony by the police officer at the hearing established that at 5:13 A.M. a burglary call was received via police radio. The address of the burgled premises and the statement " a burglary, male Negro left house" were given. Proceeding to the burgled premises and approximately two and one-half blocks therefrom, the officer noted an automobile coming from the opposite direction and being driven by a male Negro. The officer turned his own automobile around and stopped the vehicle being driven by defendant. Upon request by the officer, the defendant produced a license and registration, stating upon question that the license was his. The license was a duplicate and the defendant stated that he had not lost his license and he did not " seem to be able to answer" as to whether he was aware the license was a duplicate. The officer asked defendant what he was doing in the area and the latter replied that he had just dropped a girl off and that he did not know where he was as he was unfamiliar with the area. While asking these questions, the officer noticed a portable television on the floor in the front of the vehicle. The officer then told defendant that the automobile's rear lights were not on and that if he could light them the officer would then let him go. This was admittedly a ruse to enable the officer to " further investigate the circumstances". The defendant got out of the car and the officer saw that he was in stockinged feet which were wet and that the knees of his trousers were wet. Defendant was placed under arrest. Subsequent search produced personal property which was later found to be owned by the residents of the burgled premises. Although admittedly a factual question (*Sibron* v. *New York*, 392 U.S. 40, 67) it is clear upon the record that for the purposes of determining whether the subsequent search was incidental to a lawful arrest, the arrest was made when the officer told defendant that he would let him go if he fixed his rear lights. (*Henry* v. *United States*, 361 U.S. 98, 103; cf. *Rios* v. *United States*, 364 U.S. 253, 261). I am of the opinion that this arrest was unlawful in that it was made upon mere suspicion rather than upon reasonable grounds to believe that a felony had been committed and that defendant had committed it (*People* v. *Carrado*, 22 N Y 2d 308). At the time of the arrest, the only information the officer had was that a burglary had been committed by a male Negro. This is too vague a description upon which to base an arrest of any male Negro. There was no description of what had been taken in the burglary so that any determination that the television was part of the proceeds of such burglary would have to be made upon pure conjecture. The answers given by defendant to the officer's questioning did not lend themselves to raising the officer's suspicion to reasonable cause. Since the arrest was unlawful, the subsequent search was also unlawful and the motion to suppress should be granted.