THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT TRAPIER, Appellant.

First Department, May 1, 1975

*Morris Pottish* for appellant.

*Sharon M. Lynch* of counsel *(Peter L. Zimroth* and *T. James Bryan* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

TILZER, J. The defendant appeals from a judgment convicting him after a trial by jury of the crime of possession of a weapon as a felony and sentencing him to an indeterminate term of imprisonment not to exceed seven years. Prior to the trial the defendant moved to suppress physical evidence, i.e., a loaded pistol and ammunition, which had been found on his

person. After a hearing, the motion to suppress was denied, the trial court finding that "under the exigencies which then existed, it was reasonable to suspect that the crime of possessing a gun was being committed and to frisk therefore".

The facts are as follows:

At approximately 11:50 A.M. on June 19, 1972, Sergeant Smyth and his partner Patrolman Schneider, while on patrol car duty, received a radio call from the Central Communications Division reporting that there were three men in front of 55 West 116 Street and that one man with a cream-colored coat had a gun. The officers went to that address and saw three men standing in front of the building, one of whom was dressed in a cream-colored coat and hat. Sergeant Smyth approached the men and asked if the address on that building was 57 West 116 Street. The men responded that it was not. Thereupon, the Sergeant, who was carrying a gun concealed upon a clipboard, lifted the clipboard, displayed the gun and asked the men to "Please step in the hall with me". Accordingly, the three men accompanied the sergeant into the building and, subsequently, Patrolman Schneider also entered the hallway.

Inside the building Sergeant Smyth told the men that he had a complaint that one of them was carrying a dangerous weapon and asked if any, in fact, did possess such weapon. The men all replied in the negative. It also appears that Sergeant Smyth, at that point, asked the men to stand with their backs to him and with their hands on the wall. Defendant, however, who concededly was not dressed in a cream-colored hat or coat, kept taking his hands off the wall, thus necessitating the sergeant to repeat his directive to the defendant. In the process, the sergeant noticed that a pocket in defendant's leather jacket was swinging freely. The officer felt the pocket and then reached in and recovered several bullets.

At just about the time when Sergeant Smyth discovered the afore-mentioned contraband, a third officer, Patrolman Connolly, arrived on the scene. Connolly had also received a radio call stating that "three men, possibly armed with guns, one man dressed in a cream overcoat with a white hat, another man dressed in a dark leather jacket, and another man dressed in a blue shirt, [were] in front of 55 West 116th Street." It should be emphasized at this point that during the entire incident Sergeant Smyth apparently had his gun drawn. In any event, Patrolman Connolly asked if he could be

of help and Connolly was told to search the defendant. Thereupon, Patrolman Connolly reached into the area around defendant's left hip—under his belt—and found the subject loaded gun.

At the suppression hearing the People urged that the physical evidence was properly seized pursuant to a lawful "Stop and Frisk"*. CPL 140.50 provides that: "a police officer may stop a person in a public place located within the geographical area of such officer's employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor * * * and may demand of him his name, address and an explanation of his conduct." It is further provided that: "when upon stopping a person under [such] circumstances * * * a police officer * * * reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon".

Accordingly, the issue herein is whether there was any reasonable basis to suspect that defendant was committing or about to commit a crime when he was first directed to proceed into the hallway, since, if the initial stop (seizure) was without justification, then the subsequent frisk was improper and the evidence seized as a result must be suppressed (*People v Cantor*, 36 NY2d 106).

Based upon the above facts, we discern no reasonable basis for the initial stop and the subsequent frisk of this defendant. As stated, this defendant was concededly *not* the man described to be in possession of the gun. The officers who first responded to the call were acting upon information that the man in the cream-colored hat and coat possessed the gun. Even assuming that the police could lawfully stop the person described in the call (cf. *People v Taggart*, 20 NY2d 335; *People v Ramirez*, 47 AD2d 600; *People v Maize*, 32 AD2d 1031; *People v Watson*, 29 AD2d 987), which issue we need not now reach, there was no basis to interfere with this defendant's freedom of movement. Simply because the defendant was standing alongside a man who was alleged to possess a gun did not provide a reasonable basis to suspect that the defendant committed or was about to commit a crime. Accordingly, Sergeant Smyth initially had no basis to direct the defendant to enter the nearby hallway and such action constituted an

---

* Defendant urges that in fact he was subjected to a full-fledged search. Since we conclude that there was insufficient basis to justify even the more limited "Stop and Frisk" we do not reach this issue.

unlawful seizure of the defendant *(People v Cantor,* 36 NY2d 106, 111–112). As stated in the *Cantor* case (pp 112–113): "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand. (Compare Schwartz, Stop and Frisk: A Case Study in Judicial Control of the Police, 58 J Crim LC & PS 433, 445 with La Fave Street Encounters and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich L Rev 40, 70.) To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice *(Terry v Ohio,* 392 US 1, *supra; Wong Sun v United States,* 371 US 471, 479). Nor will good faith on the part of the police be enough to validate an illegal interference with an individual (e.g., *Terry v Ohio, supra; Henry v United States,* 361 US 98, *supra; Hill v California,* 401 US 797; *Smith v County of Nassau,* 34 NY2d 18)."

Accordingly, under the facts herein we conclude that it was unreasonable for the officer to initially stop this defendant and to thereafter conduct a frisk. Since the only evidence in support of the People's case emanated from an illegal seizure and subsequent frisk of the defendant, the judgment must be reversed and the indictment dismissed.

Accordingly, the judgment entered December 21, 1972, convicting defendant of possession of a weapon as a felony should be reversed on the law, the motion to suppress should be granted and the indictment dismissed.

STEVENS, P. J., MURPHY, CAPOZZOLI and LYNCH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on December 21, 1972, unanimously reversed, on the law, the motion to suppress granted, and the indictment dismissed.