Arthur W. Lonschein, J.
The defendant, having been indicted for felony possession of a weapon, moves to suppress both the weapon and certain inculpatory statements allegedly made to the arresting officer after being taken into custody.
The facts, as testified to, while perhaps not typical of an everyday street scene in the City of New York, depict an encounter that could only happen in this city. While on patrol in a vehicle with other officers, police officer Jack Sica was approached by two Hasidic Jews who called to them and ran in front of their vehicle. They then told the policemen, who *1069 were on anticrime patrol, that two Black males (using the Yiddish word for Black males) were on a street corner a short distance away and had a gun. Both men were described in detail — their respective heights, their clothing and the hair style of the taller of the men — that it was braided.
The police then proceeded in their vehicle to the location described by informants and a short distance from the corner, they saw the two men who matched the informants’ description. The officers noted that there were no other persons in that locality who did match such a description. As the police vehicle rounded the corner and came into view, both men began to walk away "briskly” from the vehicle. Two of the police officers approached the two men with drawn guns. The men were told by Officer Sica that he had a complaint that one of them had a gun and he told them to stand against a wall. The other officer, who frisked this defendant, stated that he felt a gun and ordered him to take his coat off. When the defendant laid his coat on the ground, Officer Sica removed a fully loaded automatic pistol from the inside lining of the coat and, thereafter, four live rounds from a pocket.
After placing the defendant under arrest and after taking him to the station house, the police officer advised the defendant of his rights. In response, the defendant told the officer that he borrowed the gun from a friend "for protection”.
The defendant contends that the stop and frisk was contrary to his rights — and the fruits of that alleged illegal action by the police — the finding of the gun and the statement must be suppressed. The People contend that the frisk was lawful and there was a reasonable basis to suspect that the defendant had a gun based upon the information given by the two informers, who concededly, are anonymous.
In reaching its conclusion, this court must be guided by the decision of the Court of Appeals in People v Green (35 NY2d 193). Therein, suppression was denied on facts that an anonymous informer pointed out the defendant therein had just committed a robbery and a subsequent frisk of that defendant, based on the informer’s information, revealed that the defendant had a gun. The court in distinguishing People v Green (supra) from an earlier decision, People v Bronk (31 N Y 2d 995) held that there is a significant degree of difference between an anonymous report that a person has a gun as against a report that the person not only had a gun but committed a crime to justify a frisk of that person. Thus, if *1070 this frisk in the case at bar were based, only upon an anonymous tip and nothing more, I would be constrained to find that the frisk and subsequent search were unlawful. If on the other hand, the police officer had reasonable suspicion that the defendant was in possession of a weapon based upon facts other than the bare anonymous tip, then the frisk could have been justified.
A definition of reasonable suspicion which would allow a deprivation of a citizen’s liberty and a frisk by police is found in People v Cantor (36 NY2d 106, 112-113): "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand * * * To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion.”
In the case at bar, the informants described the defendant and his companion perfectly, even to the point of an unusual hair style for men, the braids on one of them. In addition, the officer testified that there was no one in the locality where the informants' said the defendant and his companion were to be found who matched that description. In People v La Pene (49 A D 2d 604), the court upheld a denial of suppression upon facts where an anonymous description was not as detailed as the descriptions herein and where the police failed to check the description against others in the location where the defendant was found.
But what differentiates this case from all other cases involving anonymous tips leading to frisks ( People v Taggert, 20 NY2d 335; People v Trapier, 47 AD2d 481; People v Bronk, 66 Misc 2d 932, affd 31 NY2d 995; People v Green, supra; People v La Pene, supra; People v Williams, 51 AD2d 520, 1st Dept, April 1) is that the police officer herein described his anonymous informers by their religion! I hold that in the circumstances of the case at bar, that such an observation and description by the officer of his informers is an articulable fact which may give rise to a reasonable suspicion upon which a frisk may be founded.
It was agreed by counsel that the informants, the Hasidic Jews, wore clerical garb. In a recent case, dealing with the wearing of clerical garb (La Rocca v Lane, 37 NY2d 575, 583), the court reasoned that: "A clergyman is accorded high status by most members of our society. Whatever the. character of *1071 the man or woman who wears the cloth, the cleric is accorded a measure of respect and trust unlike that which is given to those of other vocations.”
Although there was no testimony herein that the two informants were in fact clerics, the fact that they wore clerical garb must have impressed the officer as to the reliability of their information. One who observes his religion to the point of his daily dress is one who is generally held by our society to scrupulously observe the tenets and morals taught by Judaism, Christianity and Islam alike and, in this case, a police officer could very well be impressed that such persons would "not bear false witness against thy neighbor”.
I find therefore that an articulable fact upon which to base a reasonable suspicion by a police officer is a belief that his informants, because the informants were men of religion, were reliable. Further, the unusual description of the defendant’s companion and the defendant was confirmed by the officer who found them at the location where they were said to be with no others thereat matching that description. The actions of both men in walking away briskly when the police came into view is another articulable fact. Accordingly, the frisk was justified as was the subsequent search and seizure of the gun from the defendant. The motion to suppress the gun is denied.
I also find that the defendant was given the proper Miranda warnings (Miranda v Arizona, 384 US 436) and his statements are admissible on the trial. The motion to suppress the statement is likewise denied.