Wachtler, J.
Both these cases involve the use of anonymous telephone information by the police as a predicate to approach individuals on the street. In People v Williams the order of the Appellate Division should be affirmed; in People v Stewart the order of the Appellate Division reversed.
The ratio decidendi for the instant cases will be clearer if the standards which were enunciated in People v De Bour and People v La Pene (40 NY2d 210) are reiterated. Simply stated the proper analysis in cases of this nature is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual. Thus, the predicate established defines the scope of permissible police conduct. Of course, the justification for police intervention must be based on constitutionally cognizable factors. In People v De Bour (supra), we noted that these factors are essentially gradations of the probable cause standard, with the proviso that they be objective and susceptible of articulation (People v De Bour, supra).
In evaluating the role of the exclusionary rule as a deterrent factor in this area, it is clear that the deterrent effect is directed not at the initial predicate (which can be the amalgam of any number of factors) but at the intensity of the police action. Articulated in another manner we can consider the predicate as a stimulus and the police conduct as the *67 response. Aside from the obvious objective of deterring the police from acting without any cognizable predicate, i.e., arbitrarily and capriciously, the deterrent purpose of the exclusionary rule must take into account the appropriateness of the police response.
The distinguishing element between the instant cases rests both in the predicate for the police conduct, and more important, in the intensity of the police confrontation. On the records before us, we conclude that the police officer in Williams responded in a reasonable manner while the officer in Stewart did not.
The events leading to the discovery of Donald Williams’ illegal possession of a revolver were related at the suppression hearing by Patrolman Paul Glennan. On March 1, 1974, at approximately 5:15 p.m., while he was on duty at the 26th Precinct, Officer Glennan received a telephone call from an unknown informant. The caller stated that he had knowledge that a person standing in front of the Super Fly Bar was "packing a weapon”. When asked for a description the informer indicated that the person was a "little dude” wearing a black overcoat and black hat and his name was Donald. Officer Glennan then pressed the caller for his identity, but he refused to identify himself.
As a result of this call, Officer Glennan and several other plainclothesmen proceeded immediately to the Super Fly Bar in an unmarked car. On arrival Officer Glennan observed the defendant, exactly as described, standing on the sidewalk in front of the bar. There were a few other people in the vicinity but none fitting the description of the man with a gun. Officer Glennan recognized this individual as Donald Williams, a person he had questioned only a few days before and on several previous occasions.
As Officer Glennan approached the defendant he observed a bulge in the left side of his overcoat. When he got close to Williams, Officer Glennan told him not to move and proceeded to pat him down. By virtue of his previous experience in numerous weapons arrests, Officer Glennon determined that the source of the bulge was a gun in the defendant’s left breast pocket. He reached into the pocket and extracted a loaded revolver. Williams was immediately placed under arrest.
After his motion to suppress was denied, Donald Williams pleaded guilty to possession of a weapon as a felony. The *68 Appellate Division affirmed the conviction with one Judge dissenting. We agree and would affirm.
The factual events in People v Stewart are somewhat similar; however when analyzed in accordance with De BourLa Pene principles, there are several critical differences which compel the opposite result. In Stewart, the arresting officer, Joseph Castellano, testified that on April 1, 1973 he was in uniform on radio motor patrol when at about 5:00 p.m. he received a radio message from his precinct, reporting that a man with a gun, described as a male Negro wearing a long green coat, was in front of 101 South Oxford Street. The officer proceeded to that street and was traveling the wrong way down a one-way street when he observed the defendant with four or five other' males. Patrolman Castellano called for Stewart who was wearing a long green coat to stop. The other persons continued walking but Stewart began to walk toward the officers. As he was doing so, Officer Castellano noticed that defendant’s coat was unbuttoned and observed a bulge in defendant’s left front trouser pocket.
The officer testified that, despite all his experience as a policeman and a soldier, he could not possibly have known that the pocket bulge was a gun. Indeed, as it turned out, it was not a gun—nevertheless, without any sort of inquiry the officer proceeded to touch the outside of the bulged pocket and felt a hard cylindrical object. Although the officer knew that the object he felt was not a gun he reached into Stewart’s pocket and removed eight .38 caliber bullets. The defendant was then frisked and the policeman uncovered a loaded revolver which he found in a shoulder holster under the defendant’s coat. The defendant was immediately arrested.
Defendant Stewart’s argument that the search violated his constitutional rights was rejected by the suppression court which believed that it constituted a valid stop and frisk (CPL 140.50). The Appellate Division affirmed with one Judge dissenting. We disagree with the majority of that court and would reverse.
The primary issue is whether or not the police possessed sufficient knowledge at the outset to sustain the subsequent intrusions on the privacy of the individuals accosted (People v DeBour, 40 NY2d 210, 224, supra; People v Lypka, 36 NY2d 210). Looking at the predicate of the police action first we note that while both arrests were precipitated by anonymous tele *69 phone reports of a man with a gun, there are critical differences between the cases.
In light of the principles articulated in La Pene (supra) it is clear that where an anonymous phone tip giving a general description and location of a "man with a gun” is the sole predicate, it will generate only a belief that criminal activity is afoot (People v Cantor, 36 NY2d 106; People v De Bour, supra). That type of information will not of itself constitute reasonable suspicion thereby warranting a stop and frisk of anyone who happens to fit that description (People v La Pene, supra; CPL 140.50). In that situation, the police have only the common-law power to inquire for purposes of maintaining the status quo until additional information can be acquired (Adams v Williams, 407 US 143, 145).
Thus while Officer Castellano was justified in approaching Stewart, he exceeded his authority when he felt the cylindrical object in the trouser pocket. As we noted in De Bour (supra, p 221), a bulge in the pocket, unlike a waistband bulge, could be caused by any number of innocuous objects. Moreover, the officer conceded that he could not have possibly known from the location and character of the bulge that the defendant was carrying a weapon. On this knowledge the patrolman in Stewart would have been justified if he had made a verbal and visual inquiry while taking due precaution for his own safety (see, e.g., People v De Bour, supra; People v Rosemond, 26 NY2d 101, 105; People v Trapier, 47 AD2d 481; People v Bronk, 66 Misc 2d 932, 934, affd 31 NY2d 995). As it was however, the physical intrusion on Stewart’s person was not warranted here. Before a police officer "places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so” (Sibron v New York, 392 US 40, 64).
Williams is distinguishable in that the predicate was greater by virtue of Officer Glennan’s personal handling of the tip and his recognition of Donald Williams together with the precision of the description. Indeed the United States Supreme Court in Draper v United States (358 US 307) held that similar information coming from a known informant would constitute probable cause. Moreover, the extent of the intrusion, an exterior patdown in the area of the bulge, was similar to, if not actually less intrusive than, the conduct in DeBour (supra), where the defendant was asked to open his jacket. Balancing the individual’s interest to be unfettered by official *70 interference with society’s interest in stopping crime without subjecting policemen to inordinate physical danger (Terry v Ohio, 392 US 1, 21-22) we believe that this minor intrusion was justified. Accordingly, the revolver and ammunition was properly deemed admissible in Williams thereby precluding any claim that his subsequent statements were the fruits of an illegal search and seizure.
However, in light of our determination that the weapon and ammunition in Stewart should have been excluded, we must consider whether or not the illegal seizure precludes admissibility of his postarrest statements. We believe that it does.
Unlike the situation in People v Martinez (37 NY2d 662) where we held that the incriminating statements were so attenuated from the initial unconstitutional search, Stewart’s statements were integrally related to his arrest. The key factors in Martinez were the absence of purposeful exploitation of the initial illegality by the police, the lack of a causal link between the challenged police conduct and the statements made and the existence of a valid independent basis for the subsequent interrogation.
In the instant case after Stewart was given his constitutional warnings he was questioned in the precinct interrogation room by Officer Castellano as to where he got the weapon. He responded that he took it from a man during a robbery. Stewart was subsequently charged in a multicount indictment for various counts of robbery, grand larceny, burglary and assault as well as felonious possession of a weapon. He pleaded guilty to a count of robbery in the first degree, admitting that he participated in a robbery on Waverly Avenue where he took money and the gun. On these facts we cannot say that the incriminating statements were so attenuated from the initial illegality as to be free of taint. In contrast to Martinez, the interrogation here was conducted by the same officer within a limited time frame, and the fruit of the arrest, the gun, was an integral part of the subsequent admission. Consequently, the inculpatory statement should have been suppressed along with the weapon. However, the entire indictment should not be dismissed because it is possible that the People have independent proof of the commission of the additional crimes charged in the indictment. The eighteenth count, which charges possession of a loaded revolver, should be dismissed (see People v Cantor, 36 NY2d 106, supra).
*71 Accordingly, in People v Williams the order of the Appellate Division should be affirmed. In People v Stewart the order of the Appellate Division should be reversed, the weapon, bullets, and the statement suppressed, the eighteenth count of the indictment dismissed and the remaining counts of the indictment restored to prepleading status, and the case remitted to the trial court for further proceedings on the indictment.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
In People v Stewart: Order reversed, the weapon, bullets and statement suppressed, the eighteenth count of the indictment dismissed, the remaining counts of the indictment restored to prepleading status, and the case remitted to Supreme Court, Kings County, for further proceedings on the indictment.
In People v Williams: Order affirmed.