THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIFFORD GRIFFITH, Also Known as CLIFFORD GRIFF and CARLTON GRIFFITH, Appellant.

First Department, July 11, 1978

APPEARANCES OF COUNSEL

*Joel A. Reiss* for appellant.

*Barbara L. Petras* of counsel *(Brian Rosner* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

Conflicting testimony was given at the suppression hearing as to the events surrounding the defendant's arrest at about 4:40 A.M. on March 15, 1975.

Police Officer John Crowe testified on behalf of the prosecution. Crowe and his partner, both in uniform, were cruising in an unmarked vehicle in the vicinity of 145th Street and Seventh Avenue in Manhattan. From a distance of about 50 feet, he saw three individuals walking north on Seventh Avenue toward the Lugus Bar, which was located on the southwest corner. The officer noticed that the door to that bar was locked but that patrons were in the process of leaving that establishment. Crowe testified that one of the three individuals on Seventh Avenue "was holding a paper bag with a black pipe object protruding from the head of the paper bag". It was protruding about two to four inches from the top of the bag. He believed that the "pipe object" was a shotgun or a rifle.

After briefly conversing with each other, the three individuals ran south on Seventh Avenue and turned west on 144th Street. Crowe immediately radioed for assistance. In recent weeks, several bars had been robbed at closing time by a band of three men. Crowe believed that these three individuals might be those same perpetrators. The officer lost sight of the three individuals for about three to five seconds after they turned into 144th Street.

When the officer turned the corner, the individual (Miller) carrying the bag was no longer in sight. A second individual (Laurie) was trying "to get into a door of a store". This second individual, as well as his parked car, was searched. No weapon was found and no charges were brought against this second individual. The defendant was crouched against the gate of the store; his hands were on the gate. Crowe, with his gun drawn, identified himself as an officer and told the defendant to "freeze". The officer then frisked the defendant and re-

moved a revolver from his coat pocket. Thereafter, the defendant picked up a glass from the sidewalk and finished his drink.

Bertram Laurie, a civil engineer with the New York City Board of Water Supply, testified for the defense. Laurie had been drinking intermittently with Edward Miller since about 8:00 P.M. on March 14, 1975. They had been to several neighborhood bars during that period. Although Laurie had seen the defendant several times earlier in the evening, he only began to drink with him in the Lugus Bar about one hour before closing.

Laurie, Miller and the defendant left the bar shortly after 4:00 A.M. Miller was carrying a brown bag whose contents had the smell of chicken. There was no black pipe protruding from the bag. The defendant left with a drink in his hand. The three men walked briskly south on Seventh Avenue. They had not seen a police car as they left the Lugus Bar.

Once on 144th Street, Miller disappeared into the building numbered "203" where he had a date. Laurie noted that Miller resided on that same street in building numbered "226". Later that evening, Miller reappeared and accompanied Laurie to the station house to inquire about the defendant's status. Laurie himself had gone to 144th Street because his car was parked there. He and the defendant were standing in the middle of the sidewalk when a marked cruiser approached from Eighth Avenue and an unmarked vehicle approached from Seventh Avenue. The officers searched both of their persons and recovered a revolver from the defendant's jacket.

The court at the suppression hearing believed Crowe's testimony that he saw what appeared to be the barrel of a shotgun or rifle. When the individual (Miller) with the bag vanished, the court found that the officer had the right to stop and frisk the remaining individuals, the defendant and Laurie.

The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot. (People v Cantor, 36 NY2d 106, 114.) Various arguments can be advanced to challenge Crowe's testimony that he reasonably suspected that he had come upon the holdup team operating in the subject area. First of all, it may be fairly argued that, if Crowe had the acuteness of vision to perceive a two inch "black pipe" at a distance of 50 feet, he should have also seen the glass of whiskey in defendant's hand. Secondly, it may be reasonably contended that the three individuals were not

going to rob the Lugus Bar after it had locked its doors. Thirdly, since the uniformed officers were in an unmarked car, it is highly questionable whether they were spied by the three individuals standing in front of the bar.

The foregoing arguments, plausible as they might be, must give way to the fact that Crowe did radio for assistance. This act on his part would suggest that he reasonably suspected that one of the individuals had what appeared to be a rifle or shotgun. At that juncture and in the absence of further investigation at a closer range, Crowe merely had the right to stop and make inquiry of the individual carrying the suspected weapon. *(People v Trapier,* 47 AD2d 481.)

Crediting Crowe's testimony, the defendant ran around the corner. That activity, although somewhat unusual at 4:40 A.M., is not criminal in nature. Moreover, upon turning the corner, the officer did not find the defendant either fleeing, burglarizing the store or otherwise engaging in criminal conduct. The defendant, with a glass of whiskey in his immediate presence, was leaning against a gate. Under Crowe's own narrative of the events, his description of the defendant was hardly that of a robber in flight but rather that of a patron on his way home after a long evening. Officer Crowe, with gun drawn, approached and frisked the defendant without making any preliminary inquiries. As was noted above, the frisk revealed the presence of a loaded revolver in the defendant's jacket.

■ ■ A person, otherwise acting innocently, may not be arrested merely because he was in the company of other individuals who had engaged in criminal activity. *(People v Martin,* 32 NY2d 123, 125.) The officer never established that Miller was in possession of a rifle or a shotgun. Even if the officer had established some criminal activity on Miller's part, that fact would not justify the defendant's precipitous arrest at gunpoint *(People v Martin, supra).* Similarly, we have held that the fact a particular defendant was standing alongside a man who was alleged to possess a gun did not provide a reasonable basis to suspect that such defendant committed or was about to commit a crime *(People v Trapier, supra,* p 483). Since the gun found on the defendant was seized after an unlawful arrest, it should have been suppressed.

■ Even if it be conceded that Officer Crowe had a right to stop the defendant under CPL 140.50, he should have first demanded an explanation from the defendant for his conduct

before he drew his revolver. Miller was no longer in view. Nonetheless, despite the officer's apprehension, there is no indication in this record that the officer was in any real danger or that exigent circumstances required him to draw his weapon immediately. For this additional reason, defendant's gun should have been suppressed *(People v Sanchez,* 38 NY2d 72).

Accordingly, the judgment of the Supreme Court, New York County (MARTIN EVANS, J., at the suppression hearings; LANG, J., at plea and sentence), rendered September 10, 1976, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the third degree, should be reversed, on the law, the plea should be vacated, the motion to suppress should be granted and the indictment should be dismissed.

LUPIANO, J. (dissenting). Defendant, charged with criminal possession of a weapon in the third degree, pleaded guilty to attempted criminal possession of a weapon in the third degree, a class E felony, after his motion to suppress the weapon was denied. On appeal, defendant contends that his motion to suppress should have been granted.

At the suppression hearing, the police testimony is as follows: At approximately 4:40 A.M., uniformed Police Officer Crowe, while operating an unmarked vehicle in the vicinity of the Lugus Bar (201 West 144th Street, Manhattan) and accompanied on robbery patrol by Officer Bartlett, observed the defendant and two other males approaching the bar. From a distance of some 50 to 60 feet, Officer Crowe saw one of the males, not the defendant, carrying a paper bag 18 inches long. The area was well lighted. A black pipe protruded two to four inches from the top of the bag. It appeared to Officer Crowe that the man was carrying the bag in a suspicious manner, to wit, he held the neck of the object with his left hand and cradled the bag itself with his right hand. A 14-year veteran of the police force who had received weapons training in the Armed Services, Officer Crowe had made over 100 arrests for the possession of weapons, some 30 of which involved the possession of a shotgun or rifle. Having theretofore observed weapons carried in the manner that one of the men was carrying the bag and its contents, having observed the pipe protruding from the bag, and on the basis of his prior experience and expertise, Officer Crowe believed that the male was carrying a shotgun or rifle. Parenthetically, Officer Crowe

stated that he also believed that a robbery might be about to occur. In the week to 10 days prior to this incident, three armed males had held up the Blue Angel Bar, which was two blocks from the Lugus Bar. The Angel Bar robbery had occurred at closing time, the time of Officer Crowe's present observations. Officer Crowe also testified that Mike's Bar at 143rd Street and Seventh Avenue, across the street from the Lugus Bar, had recently been held up in the same manner as the Blue Angel Bar. When the unmarked police vehicle was some 50 feet away, the three men saw the uniformed officers, said something to each other and fled. As the three men ran around the corner, the police briefly lost sight of them and radioed for assistance. Proceeding in the car around the corner, the police observed two of the three men. One of the men was trying to get into the door of a store. The defendant was crouching against a gate. The third man with the bag had disappeared. With his weapon drawn, Officer Crowe exited the vehicle, approached the defendant and told him to freeze. After frisking defendant and removing a revolver from defendant's right coat pocket, the police officer placed defendant under arrest. Defendant then picked a glass up off the ground and drank from it, with the announcement, "I'm finishing my drink." Officer Crowe declared that he never saw the three men leave the Lugus Bar, that they were approaching the bar when first observed, and that defendant had nothing in his hand.

Bertram Laurie testified for the defense that he, defendant and one Miller left the Lugus Bar after 4:00 A.M. Defendant was carrying a drink in his hand and Miller had a flat brown paper bag from which no object protruded. As they rounded a corner, Miller entered a building and disappeared. After Miller disappeared, the police officers ordered Laurie and defendant to halt, and the frisk and arrest of defendant followed.

Patently, the issue of credibility of the police officer's account and that of defense witness Laurie was for the Justice presiding at the suppression hearing to determine. This court confronted by the cold printed word of the record does not share the benefit of personal observation of the witnesses obtained by the Justice at the hearing and the other advantages to be derived therefrom. We may not substitute our feelings and views on credibility unless it may be concluded that the finding as to credibility could not be reasonably

arrived at. The issue of credibility is ordinarily for the trier of facts, and this rule must give way when the testimony is viewed on appeal as incredible as a matter of law. On this record it may not be concluded that the testimony of Officer Crowe is incredible as a matter of law. Beyond cavil, the Justice presiding over the suppression hearing is in the best position to determine credibility and his findings should be given the greatest weight (see *Bielawski v Bazar,* 47 AD2d 435). The narrative of the police at the suppression hearing is not inherently unreasonable or suspect. Indeed, the full disclosure by Officer Crowe on the People's presentation respecting the occurrence of defendant, after his arrest picking a glass up from the ground and drinking from it, an action which might lend credence to the version of the incident later narrated by the defense witness, is indicative of good faith.

It is aptly noted in *People v Johnson* (30 NY2d 929, 930): "Absent an articulate foundation for the entrenchment upon individual liberty and privacy which a stop and frisk entails, police suspicions remain merely 'hunches' and are not reasonable within [CPL § 140.50]." However, in the instant matter an articulate foundation for the police conduct was presented. The police activity had the inception in the actions of the three males and Officer Crowe's belief that one of the men was carrying a shotgun or rifle. While the officers were still in the car, which was about 50 feet away, defendant and his companions, upon apprehending the presence of the police, immediately took flight. Patently, under those circumstances the police would be remiss in not undertaking further investigation. The following observations by the Court of Appeals in *People v Rivera* (14 NY2d 441, 444-447) are most pertinent:

"The first problem is the authority of the police in the circumstances shown here to stop and question defendant. The validity of subsequent police action would in turn necessarily rest on the initial right to make the immediate and summary street inquiry.

"The authority of the police to stop defendant and question him in the circumstances shown is perfectly clear. The business of the police is to prevent crime if they can. Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets; if they were to be

denied the right of such summary inquiry, a normal power and a necessary duty would be closed off.

"And the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest. The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating then the ground for an arrest for a crime known to have been committed * * *

"Therefore, the facts developed in the record, e.g., the incidence of crime in the neighborhood, the peculiar approaches of defendant and his companion to the grill, the rapid leaving when the police were seen * * * all justified the police stopping defendant and questioning him.

"Indeed, the right of the police to stop and question the defendant in such circumstances as those disclosed by this record was recognized at common law. It is extensively treated both by statute and by judicial decision as a reasonable and necessary police authority for the prevention of crime and the preservation of public order [citations].

"If we recognize the authority of the police to stop a person and inquire concerning unusual street events we are required to recognize the hazards involved in this kind of public duty. The answer to the question propounded by the policeman may be a bullet; in any case the exposure to danger could be very great. We think the frisk is a reasonable and constitutionally permissible precaution to minimize that danger. We ought not, in deciding what is reasonable, close our eyes to the actualities of street dangers in performing this kind of public duty * * *

"From the time the policeman, in the process of frisking defendant, touched the object, inferred by him correctly to be a gun, there was probable cause to arrest defendant and to proceed at once further to invade his clothing and take the gun."

Once the police officer saw defendant and his companions take flight upon their seeing the officer, he was certainly entitled to pursue them. (People v Dread, 49 AD2d 401, 405; People v Archiopoli, 39 AD2d 748.) The precipitate action of defendant and his companions, coupled with the surrounding circumstances, present a reasonable and articulate foundation for the police conduct at issue (see People v Moore, 32 NY2d 67, 70).

Officer Crowe in pursuit of the three fleeing men with his bother officer, upon finally catching up with two of them, one of whom was defendant, emerged from the police vehicle with gun drawn. It should be noted that the officers in pursuit lost sight of the three men for an intervening period and that they believed one of the men to be armed with a shotgun or rifle. Upon approaching the two who had stopped, the officers reasonably operated under the apprehension that the third suspect who had disappeared from their view, or perhaps one of the two men whom they now confronted, would meet any inquiry with a bullet. The dynamics of this street encounter between the police and these three citizens reflect a degree of belief possessed at the point of inception which by virtue of flight and other concomitant circumstances authorized and indeed mandated the police conduct herein. There is no dispute between the People and the defendant that the third man, the man with the bag, had disappeared immediately after the three in haste had momentarily escaped the direct observation of the police. The police officer, responding to the exigencies of a chance street encounter and relying on his training and expertise in fulfillment of the grave responsibilities of his office, is required to act in a reasoned manner in accord with ordinary human nature. Truth has often been said to be stranger than fiction. The commonsense experience of life conjointly with a reasoned reflection and an awareness of the limitations of ordinary human nature dictate that the police conduct on this record was proper. The motion to suppress was properly denied.

Accordingly, the judgment of the Supreme Court, New York County (LANG, J.), convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the third degree, should be affirmed.

SILVERMAN and SULLIVAN, JJ., concur with MURPHY, P. J.; LUPIANO and BIRNS, JJ., dissent in an opinion by LUPIANO, J.

Judgment, Supreme Court, New York County, rendered on September 10, 1976, reversed, on the law, the plea vacated, the motion to suppress granted and the indictment dismissed.