■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN WATSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Deeley, J.), rendered April 29, 1981, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. This appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain inculpatory statements made by him and physical evidence seized by the police. Judgment affirmed. On October 10, 1980, plainclothes Police Officer Catalano and Detective Amato entered a restaurant located at 753 Coney Island Avenue in Brooklyn, New York, at about 11:10 A.M. While Catalano was standing at the cashier's booth, an unidentified female approached and presented him with a bag, indicating that she had found the item in the dining room of the facility. Upon opening the black leather bag so that he might determine its rightful owner, the officer discovered a loaded silver derringer and a checkbook with the name "Lois Baskerville" and another unidentified name on it. Catalano then went into the dining room, raised the bag in his right hand and inquired "[d]oes this bag belong to anybody?" Defendant, who was seated at a table with three other individuals, turned around, looked at the bag, and volunteered "[t]hat's my bag". As Catalano walked toward the defendant's table, however, defendant disavowed ownership of the item. Upon arrival at the table, the officer identified himself and asked those seated for identification. When Lois Baskerville, who was seated at the table with defendant, presented identification matching the name on the checkbook found within the bag, Officer Catalano placed her under arrest. As defendant rose to let his companion Lois Baskerville out of her seat, Catalano patted him down, felt an object in the right jacket pocket, and removed a black holster containing a revolver loaded with five rounds. Officer Catalano explained that he frisked defendant because of defendant's assertion of ownership of the bag, and further, because the officer feared for his life — he did not "know what [defendant] had on him". Upon discovering the revolver, Catalano arrested defendant and proceeded to escort defendant and his companion to a patrol car parked outside the restaurant — a short walk taking less than a minute. It was while defendant was en route to the car that he again claimed ownership of the bag, spontaneously volunteering "[i]t's my bag". In view of this representation, Lois Baskerville was released after being questioned at the station house. At the conclusion of the hearing on defendant's motion to suppress the weapon found on his person and his postarrest statements to the police officer, Criminal Term denied the motion in its entirety. Crediting Officer Catalano's version of the relevant events, the court found that defendant's "admission to ownership of the bag, and thus, the gun * * * supplied the necessary suspicion of danger of physical injury on the part of the officer that enabled him to properly frisk the defendant". We cannot agree with our dissenting colleague, that while defendant's claim of ownership of the bag containing a gun gave Officer Catalano sufficient predicate to approach defendant and make further inquiry, the circumstances were not such that this police officer reasonably could have inferred that his safety or that of others was endangered and, therefore, justifiably could frisk defendant for weapons. The Fourth Amendment as applied to the States through the Fourteenth Amendment protects individuals

from "unreasonable searches and seizures" (US Const, 4th Amdt), "[t]he basic purpose of [such] protections [being] to safeguard the privacy and security of each and every person against all arbitrary intrusions by government" (*People v De Bour*, 40 NY2d 210, 217). However, where a police officer, having made limited inquiry of an individual founded upon a reasonable suspicion that such person is committing, has committed or is about to commit a crime (CPL 140.50, subd 1), is possessed of additional information sufficient to support an independent belief that such person is presently dangerous, the officer may conduct a "frisk" or "pat-down" for weapons (CPL 140.50, subd 3; see *Terry v Ohio*, 392 US 1, 27; *People v Sanchez*, 38 NY2d 72, 74-75; *People v Mack*, 26 NY2d 311). Further, while a police officer's reasonable suspicion that his safety or that of others is in danger must be based upon "clear and articulable facts", there is no requirement that the officer conducting a frisk be absolutely certain that the person subjected to such intrusion is armed (*People v Hauser*, 80 AD2d 460, 463, citing *Terry v Ohio*, 392 US 1, 27, *supra*). Reasonable suspicion of danger must constitute more than a mere hunch or a "gut" feeling. Rather, the police officer must articulate specific inferences, drawn from the particular facts, which, in light of his experience, would cause a reasonably prudent man in such circumstances to harbor a rational belief of danger (see *Terry v Ohio*, 392 US 1, 27, *supra; Sibron v New York*, 392 US 40, 64). For example, in reviewing the determination of the suppression court with respect to the reasonableness and appropriateness of police action, a determination to which this court must accord substantial deference (see *People v Prochilo*, 41 NY2d 759; cf. *People v Oden*, 36 NY2d 382), we should consider: "[A]t least three aspects of each individual transaction * * * Was there proof of a describable object or of describable conduct that provides a reasonable basis for the police officer's belief that the defendant had a gun in his possession? Was the manner of the officer's approach to the defendant and the seizure of the gun from him reasonable in the circumstances? Was there evidence of probative worth that there had been a pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose? There will be other material considerations, too, in individual cases. Because the totality of the circumstances in each case is necessarily unique, there should be no expectation that comparable significance will always attach to the same or similar factors in different cases" (*People v Prochilo*, 41 NY2d 759, 761-762, *supra*). Applying the afore-mentioned considerations, we are of the opinion that the totality of Officer Catalano's observations support Criminal Term's determination that he was possessed of a reasonable suspicion of danger such as to warrant the minimal intrusion of a frisk of defendant. Defendant initially claimed and then, upon Officer Catalano's approach, disavowed ownership of a bag which Catalano knew to contain a gun. Further, in view of defendant's equivocation, the discovery that Lois Baskerville bore the same name as that on the checkbook within the bag increased rather than militated against the officer's enunciated and not unfounded concern for his safety and his belief that defendant was armed. The dissenter's reliance upon *People v Trapier* (47 AD2d 481) is misplaced. True, Justice Tilzer's opinion does stand for the proposition that mere proximity to another described as being in possession of a gun cannot suffice to support a conclusion that an individual is committing or about to commit a crime, and, accordingly, there can be no justification for an initial stop or for a subsequent frisk of such individual (see *People v Trapier*, 47 AD2d 481, 483-484, *supra*). Here, however, defendant asserted conflicting claims of ownership to a bag which contained a loaded gun, and, by his own equivocal actions, led Officer Catalano to the reasonable inference that he should be concerned for his own safety, and indeed, for the safety of others in the restaurant. We are not persuaded by the argument that because the events

herein took place in the daytime and at a location frequented by police officers, two uniformed officers being present at the time, Officer Catalano's fear for his safety should somehow have been attenuated. Admittedly, a police officer's actions are to be examined in light of the circumstances surrounding a particular encounter (see *People v Cantor,* 36 NY2d 106, 111; *People v Finlayson,* 76 AD2d 670, 674, cert den 450 US 931), but the suspicion that a particular individual is armed and dangerous is not rendered unreasonable by virtue of the time of day or the presence of other police officers, particularly where, as here, the record is bereft of any evidence that the officer-patrons were aware of the events transpiring between Catalano and defendant. Defendant's contention that his reassertion of ownership of the bag made to Officer Catalano while en route to the patrol car should have been suppressed, is likewise without merit. An objective examination of the record leads to the conclusion that the statement constituted a voluntary and spontaneous remark, and not one "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" (*People v Lynes,* 49 NY2d 286, 295; see *People v Baez,* 79 AD2d 608, 609). Accordingly, defendant's motion to suppress having been properly denied, the judgment of conviction appealed from should be affirmed. Mangano, J. P., O'Connor and Boyers, JJ., concur.

Brown, J., dissents and votes to reverse the judgment appealed from, on the law and the facts, and to grant defendant's motion to suppress, with the following memorandum: The issue presented is whether the People established the existence of specific articulable facts sufficient to justify the frisk of defendant. In my judgment, the frisk was illegal and the evidentiary fruits derived therefrom were tainted. Accordingly, I conclude that Criminal Term erred in denying defendant's motion to suppress both the physical evidence seized and the inculpatory statements made by defendant. The two witnesses who appeared at the suppression hearing, Police Officer Catalano, the arresting officer, and Bernard Devine, an eyewitness, gave conflicting testimony as to the events surrounding the frisk and subsequent arrest of defendant. Accepting, as did Criminal Term, the People's version, it appears that Officer Catalano, who was in plainclothes, had entered a restaurant on Coney Island Avenue in Brooklyn to purchase two containers of coffee. An unidentified female thereupon approached the cashier's booth with a black leather handbag which she claimed to have just found in the back of the restaurant. The officer opened the bag and found therein a gun and a checkbook bearing the name "Lois Baskerville" and another name he could not recall. The officer walked to the back of the restaurant, held up the bag and asked if it belonged to anyone. At that point defendant, who was seated at a table, turned and said, "That's my bag". But as the officer walked towards the table defendant stated, "Oh, no; that's not my bag". The officer then asked all four people who were seated at the table for identification. A woman seated next to defendant identified herself as Lois Baskerville. The officer immediately placed her under arrest. While his partner patted down the other individuals at the table, the officer frisked the defendant and discovered a loaded revolver in his jacket pocket. The officer testified that the frisk of defendant was based on the fact that defendant had made the statement that the bag was his and also because of "[f]ear for my life. I didn't know what he had on him". The officer conceded, however, that prior to the frisk he had not observed any suspicious conduct by either defendant or any of the other people at the table. After defendant was arrested and handcuffed and as he was being led to the patrol car, he stated that the bag was, in fact, his. Ms. Baskerville was subsequently released. It is clear that, under the circumstances, the officer had a right to question the defendant and the other individuals at the table. A police officer who possesses

a reasonable suspicion that a person has committed or is committing or is about to commit a felony or misdemeanor may detain that person temporarily for questioning (*Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210). An officer's right to frisk, however, must be founded upon something more than mere suspicion of criminal activity and may only be derived from the officer's knowledge or reasonable suspicion that the suspect is armed and dangerous (*People v De Bour, supra,* p 223). In looking at the totality of circumstances here present, I do not believe that it can be said that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger" (*Terry v Ohio, supra,* p 27). In *People v Finlayson* (76 AD2d 670, 679, cert den 450 US 931) Presiding Justice Mollen explained that the key question in a stop and frisk case is whether the "protective measures" taken are reasonable under the circumstances. Two areas of knowledge and belief were delineated. "The first involves information pointing to the individual as the perpetrator of the crime. * * * The second area of knowledge and belief concerns information from which it can reasonably be inferred that the suspect is armed and dangerous. The officer's right to take protective action derives from and is measured against this second area of knowledge, and the question of whether his apprehension of danger was reasonable will necessarily turn upon an examination of the totality of the surrounding circumstances. These might well include the time of day and the location at which the confrontation takes place, the number of suspects in relation to the number of officers present and, of course, the nature of the suspected offense" (pp 679-680). In my judgment, the instant case fails the *Finlayson* test. In my view, looking at the totality of the circumstances here present, the officer did not have sufficient reason to suspect that the defendant was armed and dangerous. While the officer did testify that he was in fear for his life, he also stated that neither the defendant nor anyone else at the table had done anything suspicious. He did not testify to any facts, such as a bulge in the defendant's clothing, from which the officer could have inferred that defendant was armed (see *People v De Bour,* 40 NY2d 210, *supra*). Furthermore, when the officer approached defendant, he was accompanied by his partner, it was the middle of the day, they were in a public restaurant frequented by police officers, and, in fact, two uniformed officers were seated at another table nearby. What we have here is nothing more than defendant's mere presence in the company of another person who was suspected of having possessed a gun. That fact alone did not provide a sufficient basis for the officer's concluding that the defendant possessed a weapon (*People v Trapier,* 47 AD2d 481; see, also, *People v Batista,* 68 AD2d 515, affd 51 NY2d 996). To justify a decision to frisk, an officer must be able to point to specific articulable facts which led to his belief that such a protective measure was necessary for his safety. The officer's decision may not be based upon a mere hunch (*People v Sobotker,* 43 NY2d 559; *People v Delmonico,* 94 AD2d 773). Here, the only fact which in any respect created a suspicion on the officer's part was defendant's claim of ownership of the bag, which was immediately retracted. In the context of defendant's otherwise concededly innocent and nonsuspicious conduct, I fail to see how this fact can support a conclusion that defendant was armed and dangerous. I am not unmindful of the risks and often violent consequences of police-civilian encounters and the need for the exercise by police officers of reasonable protective measures in appropriate instances. Nonetheless, the circumstances of this case just do not provide a sufficient basis upon which to conclude that the frisk of the defendant was justified. Since, in my judgment, the frisk was illegal, the gun seized as a result thereof should have been suppressed. Likewise, the statement made to the police which was a fruit of the unlawful frisk and subsequent arrest should also have been suppressed (*Wong Sun v United States,* 371 US 471).