■ The People of the State of New York, Respondent, v David L., Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered November 2, 1978, upon his adjudication as a youthful offender, after his plea of guilty to criminal possession of a weapon

in the third degree, the sentence being probation for five years. The appeal brings up for review the denial, after a hearing, of the defendant's motion to suppress evidence. Judgment reversed, on the law, motion to suppress granted, indictment dismissed and case remitted to Criminal Term for purposes of entering an order in its discretion pursuant to CPL 160.50. At approximately 8:10 P.M. on September 28, 1977 two officers on radio motor patrol observed a vehicle proceeding eastward on Fulton Street in Brooklyn. The vehicle had a defective rear light and was making excessive noise. Consequently, the officers drove alongside and signaled for the driver of the car to stop. He complied and then alighted from the car. The driver then had a conversation with one of the officers while the other officer positioned himself on the passenger side of the vehicle. There was one passenger in the car, the 17-year-old defendant. He remained seated in the front passenger seat. After a few minutes, both officers walked with the driver to the rear of the vehicle where they continued their conversation. The defendant, however, remained in the passenger seat with the door closed. Thereafter, the officer who had initially stood on the passenger side of the car, returned to that position and, for some unexplained reason and without any provocation, opened the front passenger door. When the door opened, the defendant slid toward the middle of the front seat and, as he did so, his sweater "rolled up on him" revealing a weapon tucked into his waistband. He was thereupon arrested and charged with possession of the weapon. His motion to suppress was subsequently denied and his adjudication as a youthful offender followed. We reverse. It is settled that, as a protective measure, an officer who lawfully stops a vehicle for a traffic offense may order the driver to step out of the car. (See *Pennsylvania v Mimms,* 434 US 106.) Nevertheless, in the absence of any independent indication of criminality or of danger to the officer himself, he is not entitled, at his whim, to take the additional step of opening the doors of the vehicle to look inside. (See *People v Vidal,* 71 AD2d 962.) Since the officer offered no reasonable explanation to justify his opening of the door here, and since it was that act that enabled him to observe the weapon, the gun must be suppressed and the indictment dismissed. (Cf. *People v Earley,* 76 AD2d 335.) Finally, the dissent observes that defendant, who had no possessory interest in the car, could not have challenged the opening of the car door by police as infringing upon any of his Fourth Amendment rights. *Rakas v Illinois* (439 US 128) is cited as controlling. We respectfully point out, however, that *Rakas* is distinguishable on its facts. There the police searched the car's glove compartment and the area under the front seat. The United States Supreme Court narrowly concluded that the petitioners therein (pp 148-149) "made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." In the case at bar, defendant did not attack the search of concealed areas of the car, concerning which, he, as a passenger, had no knowledge, control, or interest. Rather, he complained of unwarranted police intrusion into that space of the car in which he had been sitting as a passenger. That space, over which he had been granted guest privileges, was observably nonpublic. And defendant, by his rightful action, as a guest, in keeping the car door closed, continued to maintain its private nature. Therefore, he had a sufficient and continuing personal interest in a nonpublic space in which he could legitimately expect his right of privacy to be protected from unreasonable searches and seizures under the Fourth Amendment. (See *Rakas v*

*Illinois, supra,* p 143.) Thus, he demonstrated the requisite standing to challenge the search. It should be noted that we have reached our conclusion on the issue of standing on an "expectation of privacy" analysis consistent with the holding in *Rakas (supra),* as well as those in *United States v Salvucci* (448 US 83) and *Rawlings v Kentucky* (448 US 98). (Cf. *People v Ponder,* 77 AD2d 223.) We are not unmindful of the abandonment of the doctrine of "automatic standing" *(United States v Salvucci, supra),* and we do not base today's decision on this discredited doctrine. We hold, contrary to the dissent, that the opening of the car door by the police was more than a minimal intrusion into the car, which infringed upon defendant's personal right of privacy as a passenger in the car. It was therefore a violation of his personally assertable right to be secure against unreasonable searches and seizures (US Const, 4th Amdt). Solely as a result of this violation was defendant's gun observed in plain view and subsequently seized. The exclusionary rule, that evidence seized during an unlawful search cannot constitute proof against the victim of the search *(Weeks v United States,* 232 US 383), extends as well to the indirect as the direct products of such invasions. *(Silverthorne Lbr. Co. v United States,* 251 US 385; see *Wong Sun v United States,* 371 US 471; see, also, *Mapp v Ohio,* 367 US 643, for application of the exclusionary rule to the States through the 14th Amendment to the United States Constitution.) Therefore, seizure of defendant's gun as the indirect product of the illegal search of the car rendered it inadmissible evidence against defendant, who having had his personal right of privacy violated, was the victim of the search. Titone, Mangano and Margett, JJ., concur.

Hopkins, J.P., and Weinstein, J., dissent and vote to affirm the judgment of conviction, with the following memorandum. The narrow question before us is whether a police officer may open the door to a motor vehicle during the course of an investigation following the legal stop of the vehicle for good cause — here a defective tail light and excessive noise. We think that to hold the police may not so behave, under the circumstances here, imposes an unreasonable and unduly onerous burden on the legitimate activities of law enforcement agents. We must always hold in mind that it is only unreasonable searches and seizures from which the individual is protected under the Federal and State Constitutions (US Const, 14th, 15th Amdts; NY Const, art I, § 12). In determining the unreasonableness of a search and seizure the total circumstances must be considered. Here the defendant was seated in an automobile lawfully stopped by the police while it was proceeding on a public highway. The United States Supreme Court has lately recognized the inordinate danger to a police officer as he approaches a person seated in an automobile *(Pennsylvania v Mimms,* 434 US 106, 110). The statistics of police homicides indicate, as the Supreme Court pointed out in *Mimms,* that (p 110) " 'a significant percentage of murders of police officers occurs when the officers are making traffic stops' " *(People v Troiano,* 35 NY2d 476, 478, 482 [concurring opn by Rabin, J.]). The opening of the door of the car lessens to a substantial degree the risk of injury to the officer from the use of a gun by a passenger. It cannot be said, therefore, that the "search", i.e., the mere opening of the door, was unreasonable. We note, too, that the expectations of privacy of a passenger of an automobile fall considerably below the expectations of privacy of an occupant of a dwelling *(Cardwell v Lewis,* 417 US 583, 590; *People v Kreichman,* 37 NY2d 693, 698). Here, the opening of the door was a minimal intrusion into the defendant's expectations of privacy, and was justified under the necessity of securing the officer's safety. Indeed, once the door was opened, the defendant's

own conduct in sliding across the seat, and thus exposing to view the gun in his waistband, was clear evidence of the wisdom of the officer's precaution. In addition, since the defendant was not shown to be either the operator or the owner of the car, the opening of the door violated no possessory rights of the defendant in the car, and he cannot be heard to complain over that intrusion, minimal as it was (see *Rakas v Illinois,* 439 US 128, 148-149). Though the defendant held a possessory interest in the gun, that interest was not infringed by a search of his person by which the gun was discovered; the gun came into sight through the entrance of the police into the car. Thus, even assuming that the intrusion was unwarranted, the defendant cannot claim an illegal search since none of his interests were abridged. For these reasons, we would affirm.