THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RICHARD LIVIGNI, Appellant.

Second Department, August 23, 1982

**APPEARANCES OF COUNSEL**

*Mahler & Harris, P. C. (Stephen R. Mahler* of counsel),
for appellant.

*John J. Santucci, District Attorney (Ann B. Miele* of
counsel), for respondent.

**OPINION OF THE COURT**

MANGANO, J.

A narrow question is presented by this appeal, viz., is it
reasonable under the Fourth and Fourteenth Amendments
to the United States Constitution for a police officer, while
standing beside a motor vehicle in the course of investigat-
ing a traffic infraction, to order a passenger out of the
vehicle at gunpoint because of the officer's observation of
an empty gun holster in plain view in the passenger
compartment of the vehicle. We answer in the affirmative.

On May 13, 1980, at approximately 11:45 A.M., while on patrol in an unmarked car, Police Officer Richard Platzer and his partner observed a car without a front license plate parked at 116th Avenue and 132nd Street in Queens. The two officers approached the car on foot, with Platzer going to the passenger side and his partner to the drivers side. There were two occupants of the car, the appellant, who was sitting in the front right passenger seat, and the driver. Officer Platzer's partner spoke to the driver and asked him to produce his license and registration. At this point, Platzer noticed an empty gun holster on the front seat between appellant and the driver, and apparently alerted his partner. The two officers then drew their guns and ordered appellant and the driver out of the car. As appellant exited the vehicle, Officer Platzer observed a gun on the front seat where appellant had been sitting. The police seized the gun and placed appellant and the driver under arrest. *Miranda* warnings were given, after which appellant and the driver made statements to the police.

By pretrial motion, appellant sought to have evidence of the seized gun and of his statement to police suppressed. He claimed that when the police ordered him out of the car at gunpoint, they were effecting a Fourth Amendment seizure based solely on their observation of the empty holster. This, he contended, was illegal, because such an observation, without more, could not constitute a sufficient basis for seizing and detaining him. He, therefore, claimed that the evidence of the gun and his statement to police, having been obtained as the fruit of his illegal seizure and detention, were inadmissible against him at trial.

Criminal Term concluded that, to whatever extent the police order to exit the vehicle was a seizure, it was reasonable under the circumstances and not prohibited by the Fourth and Fourteenth Amendments to the United States Constitution. Consequently, the motion to suppress was denied.

We affirm.

There is an inordinate risk confronting a police officer as he approaches a person seated in an automobile to investigate a violation of law (*Pennsylvania v Mimms*, 434 US

106, 110; *Adams v Williams,* 407 US 143, 148, n 3) — a risk rendered no less dangerous by the fact that the approach is occasioned only by an apparent traffic infraction (*United States v Robinson,* 414 US 218, 234). Thus, whenever a motor vehicle is legally stopped, a police officer will be authorized by law and common sense to order the occupants to exit the vehicle while investigating the cause for the stop, e.g., a traffic infraction (*Pennsylvania v Mimms, supra*). Such an order creates nothing more than a *de minimis* intrusion into the privacy interests of the motor vehicle occupants, as protected by the Fourth Amendment to the United States Constitution. When balanced against the legitimate concerns for the officer's safety, such a minimal intrusion does not constitute an unreasonable, and, therefore, unconstitutional, seizure (*Pennsylvania v Mimms, supra,* pp 110-111; see *People v David L.,* 56 NY2d 698, revg 81 AD2d 893 on dissenting memorandum at App Div), though seizure it be (see *People v Allende,* 39 NY2d 474; *People v Cantor,* 36 NY2d 106). It is justified on the ground that in a motor vehicle stop "a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this [i.e., the authority of the police to order an occupant out of a car], in turn, reduces the likelihood that the officer will be the victim of an assault." (*Pennsylvania v Mimms, supra,* p 110.)

Under the circumstances of the case at bar, the police order to exit the vehicle was authorized simply because it was issued in the course of an investigation into an apparent traffic violation involving an occupied car stopped on a public street. (See *Pennsylvania v Mimms,* 434 US 106, *supra.*) Additionally, however, and consistent with the safety concerns recognized as counterbalancing any unconstitutionally intrusive effect of such an order, the action of the police in this case was even more justifiable. The presence of the empty holster on the front seat of the car, and the readily available inference that a gun was not far away (see *People v Samuels,* 50 NY2d 1035, 1037), gave the officers reasonable grounds to take the precautionary measure of ordering the occupants out of the car. (See *Pennsylvania v Mimms, supra,* p 110; *Terry v Ohio,* 392 US 1, 19.)

Thus, the predicate for the officers' action was twofold: (1) the empty holster and (2) its presence in an inherently dangerous location, i.e., an occupied automobile stopped for a traffic infraction. Admittedly, an empty holster alone is not sufficient evidence of criminality to permit a seizure and detention. (See *People v Samuels, supra,* p 1037.) Nevertheless, where, as here, the holster, being directly suggestive of a gun, is observed by police under a potentially menacing set of circumstances, i.e., in the context of a car stop, sufficient reason will exist for such a seizure and temporary detention as a proper precautionary measure by police. (*Pennsylvania v Mimms, supra; People v Samuels, supra.*)

The fact that defendant was a passenger in the stopped car does not affect our analysis of whether he was illegally seized within the context of the Fourth Amendment, nor does the fact that he and the driver were ordered out of the car at gunpoint.

As already noted, the safety of a police officer is placed in jeopardy whenever he approaches a stopped vehicle to investigate an apparent or suspected violation of law, since the potential threat of a successful assault always exists due to the concealed and dangerous movements of a person seated in the vehicle. Since a driver or passenger is equally capable of creating such a threat, then the safety concerns of a police officer are equally applicable in counterbalancing any possibly intrusive effect of a police order to either a driver or passenger to get out of the car. (See *People v David L.,* 56 NY2d 698, revg 81 AD2d 893, *supra;* but cf. *People v Marin,* 80 AD2d 541, application for lv to app den 53 NY2d 844.) Thus, the claim of an unconstitutional seizure by a passenger, such as defendant herein, who was ordered out of a car during a lawful motor vehicle stop, should be accorded no greater weight than that of a driver, and should result in the same conclusion, i.e., if there was an intrusion, it was so minimal as not to be disproportionate to the situation. (*Pennsylvania v Mimms,* 434 US 106, *supra.*) This is especially true where, as here, the inherently dangerous situation of a motor vehicle stop is made even more dangerous by the menacing and suggestive

presence of a gun holster in close proximity to both driver and passenger.

The fact that the police order in this case was issued at gunpoint does not alter today's result. The police approached the vehicle to investigate a traffic violation. At that point, with guns holstered, they could have ordered all of the occupants out of the car under the holding in *Pennsylvania v Mimms* (*supra*) as interpreted by us today. That order alone would have resulted in a seizure deemed reasonable by the mere circumstance of a lawful motor vehicle stop. Nevertheless, such an order was not issued until the empty holster was observed on the front seat of the car, and then it was issued with guns drawn. The question is, therefore, not whether a seizure was authorized, but whether an otherwise lawful seizure was rendered unlawful by the amplification of its coercive nature due to the officers' drawn guns. "To say the least, it would hardly be likely that police engaged in [the investigation of a traffic violation] would, without other provocation * * * do so with guns drawn." (*People v Allende,* 39 NY2d 474, 476, *supra.*) But here there was other provocation — the suggestive presence of the empty gun holster (see *People v Samuels,* 50 NY2d 1035, 1037, *supra*). Facts were, therefore, available to the police at the moment of the seizure that would have warranted them as men of reasonable caution to believe that the combined action of drawing their guns and ordering the occupants out of the car was appropriate. (See *Terry v Ohio,* 392 US 1, 21-22, *supra; People v Allende, supra; People v Cantor,* 36 NY2d 106, *supra.*) Faced with the usual hazards attendant upon a motor vehicle stop, which were heightened by evidence that a gun might be available for use by the occupants, the police accompanied the accepted precautionary measure of issuing an order to get out of the car with the protective action of drawing their guns. Within the context of the minimal intrusion associated with the order to exit the vehicle, the drawn guns were simply an added safety response to an added danger. (See *People v Chestnut,* 51 NY2d 14; *People v Finlayson,* 76 AD2d 670; *People v Earley,* 76 AD2d 335.)

Wherefore, we hold that the police legally ordered appellant out of the car at gunpoint and that evidence of the weapon seized by police in "plain view" from the front seat of the car where appellant had been sitting was not inadmissible as the fruit of an illegal seizure of appellant. (See *People v David L., supra;* cf. *People v Allende, supra; People v Spinelli,* 35 NY2d 77.) Nor was evidence of appellant's statement to police subject to suppression on that ground. (Cf. *Dunaway v New York,* 442 US 200; *Wong Sun v United States,* 371 US 471.)

We have examined defendant's other contentions and have found them to be without merit.

Accordingly, the motion to suppress was properly denied and the judgment of conviction should be affirmed.

TITONE, J. P., BRACKEN and BOYERS, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered May 15, 1981, affirmed.

This case is remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (subd 5).