THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH McLAURIN, Appellant.

First Department, November 25, 1986

## APPEARANCES OF COUNSEL

*Hillard Wiese* of counsel *(Catharine A. Grad* with her on the brief; *Philip L. Weinstein,* attorney), for appellant.

*G. Kristian Miccio* of counsel *(Jeremy Gutman* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

OPINION OF THE COURT

Sullivan, J.

After the denial of his motion to suppress, defendant pleaded guilty to the illegal possession of a handgun observed in the pocket of his jacket as he exited from a car stopped for speeding. He now challenges the police officer's conduct in ordering him, a passenger, out of the car. The following account of the incident is taken from the transcript of the suppression hearing.

At about 11:30 P.M., on August 30, 1982, Police Officer Benson, the People's only witness and a 10-year veteran of the New York City Police Department, and Detective Fitzsimmons, both of whom were in plain clothes and assigned to the Bronx Central Robbery Division, were traveling north on University Avenue in an unmarked car. Benson, who was seated in the front passenger's seat, observed a small, red automobile with rental plates pass him at a speed of about 45 miles per hour. Since the speed limit in that area was only 30 miles per hour, the officers decided to follow the car, which made a right turn at the next corner.

When the police officers turned at the corner, Benson saw the car half way down the street, near the curb, with its lights off and brake lights on. The car was still moving. The officers pulled alongside. Rolling down his window, Benson identified himself and asked the driver to stop the car. Both officers exited their vehicle, and, as Benson approached the passenger's side, the defendant, Joseph McLaurin, rolled down his window. Benson asked what he and the driver were doing. After a brief conversation, the content of which he could not recall, Benson asked defendant to exit the car. According to Benson, as defendant opened the door, he "observed in a bulge in his jacket he had on, a waist length jacket he had on, a small caliber revolver." Benson removed the gun from the jacket pocket, showed it to Fitzsimmons, who was questioning the driver at the time, and then placed defendant under arrest. The driver was never issued a summons for speeding or, for that matter, any other infraction.

According to Richard McLaurin, defendant's brother, who himself had been previously convicted of possessing a gun illegally, he had just picked up defendant and had traveled less than 75 yards, never exceeding 30 miles per hour, when he was stopped as he was making a right-hand turn by three police officers in another car. One of the officers asked him for

his license and registration and then "asked [him] to step out of the car and move to the back" where he was frisked. When the officer had finished, another officer ordered defendant out of the car. He watched as defendant was searched and then heard the other officer yell, "I got one."

Another brother, Charles McLaurin, testified that, on the night in question, while driving directly behind his brother's car, about "two car lengths" away, another vehicle, the occupants of which he could not see, pulled in between them. Both vehicles made a right-hand turn, while he continued driving straight ahead. He estimated the rate of speed of his brother's car at between 25 and 30 miles per hour.

The hearing court credited Officer Benson's account of the incident and held that the officers were justified in stopping the McLaurin car. Additionally, citing *People v Livigni* (88 AD2d 386, *affd* 58 NY2d 894), it held that Benson was justified in ordering defendant out of the car. Finally, the court found that the officer had probable cause to arrest defendant after he observed the gun in his pocket. Although defendant challenges the People's version as incredible and tailored to overcome constitutional objections, we accept the hearing court's resolution of the credibility issue, a finding which should "be accorded great weight" *(People v Velazquez,* 104 AD2d 761, 762, *affd* 64 NY2d 1118). The only other issue raised is the legality of the police officers' conduct in stopping the car in which defendant was a passenger and ordering him out of the vehicle.

Defendant argues that, even assuming Officer Benson's testimony to be credible, the gun recovered from his pocket must be suppressed since it was discovered as a result of an unlawful seizure of his person. In support of this claim, defendant cites the police officer's own testimony that he stopped the vehicle in which defendant was a passenger for a routine traffic violation and never observed any conduct that would give rise to a suspicion of wrongdoing on defendant's part. Thus, defendant argues, from Officer Benson's perspective, he was a law-abiding citizen who happened to be in a car stopped for speeding. Since none of the circumstances surrounding the stop gave the officer reasonable suspicion to believe that defendant was involved in criminal activity or posed a threat to his safety, the officer's order to exit the car—a clear assumption of control over defendant's freedom of movement —was unlawful. Inasmuch as the officer's conduct violated his right to be free from an unreasonable seizure (US Const 4th,

14th Amends; NY Const, art I, § 12), defendant argues, the gun which was found as a result must be suppressed.

In advancing this claim, defendant argues that the propriety of detaining an automobile passenger should be measured by the same standard used to determine the propriety of all intrusions on a citizen's liberty of movement, viz., whether the police officer possessed reasonable suspicion based on articulable facts to believe that the person was involved in criminal activity or posed a danger to the officer. *(See, Terry v Ohio,* 392 US 1, 30; *People v Harrison,* 57 NY2d 470, 476; *People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106, 111; *see also,* CPL 140.50 [1].) This perspective, however, comports with neither Federal nor State constitutional precepts.

It should be noted that defendant has never claimed that an investigatory stop of a motor vehicle is unlawful. Nor could he. It is well settled that a traffic violation may form the predicate for a police stop. *(People v Ingle,* 36 NY2d 413; *cf. People v Allende,* 39 NY2d 474.) As already noted, the hearing court found that the car in which defendant was riding was justifiably stopped for speeding.

In *Pennsylvania v Mimms* (434 US 106), the Supreme Court held that a police officer's ordering a driver out of a car lawfully stopped for a traffic violation did not violate the 4th Amendment's proscription against unreasonable seizures. The court found such a minimal intrusion to be reasonable in light of the inordinate and inherent risks confronting a police officer when he approaches a lawfully stopped motor vehicle to investigate a violation of law. "The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it" *(supra,* at p 111). Following *Mimms,* those New York courts confronted with the problem have held that a valid investigatory stop may be accompanied, as a protective measure, by a police directive that the occupants exit the car or by the officers' opening of a passenger door. *(People v David L.,* 56 NY2d 698, *revg on dissenting mem at App Div* 81 AD2d 893, 895-896, *cert denied* 459 US 866; *People v Livigni,* 88 AD2d 386, *supra.)* In *David L.,* the conduct of a police officer, who had participated in the lawful stop of a car for good cause, in opening the passenger door and seizing a gun subsequently observed in plain view in the possession of the passenger, was upheld. In *Livigni,* the Second Department upheld the actions of police

officers who ordered the occupants out of a car after a lawful stop. Such an order was justified, the court noted, "simply because it was issued in the course of an investigation into an apparent traffic violation involving an occupied car stopped on a public street" *(supra,* at p 388).*

Although this court has addressed the issue of whether the police may order a passenger out of a car after a stop for a traffic violation, it has not decisively ruled on the matter. In *People v Marin* (80 AD2d 541, *lv denied* 53 NY2d 844), decided in 1981, we stated that "passengers may not be ordered out [of a car] absent some suspicion directed at them". Yet, in *People v Moro* (101 AD2d 747), without any reference to *Marin,* we later held, citing *Livigni (supra),* which had been decided in the interim and affirmed by the Court of Appeals, that a police officer could order a passenger out of a car after a lawful stop for a traffic infraction.

*Livigni (supra)* and its progeny support the premise that when police officers approach a vehicle to investigate a traffic violation they are justified, as a safety measure, in ordering the occupants out of the car. *Pennsylvania v Mimms* (434 US 106, *supra),* which addressed only the issue of a driver's 4th Amendment rights, although its reasoning would apply equally to a passenger, does not suggest a different result. That court, "recogniz[ing] the inordinate risk confronting an officer as he approaches a person seated in an automobile", thought "it too plain for argument that the State's proffered jurisdiction [for the practice of ordering "all drivers out of their vehicles as a matter of course whenever they had been stopped for a traffic violation" *(supra,* at pp 109-110)]—the safety of the officer—is both legitimate and weighty" *(supra,* at p 110). Indeed, as the Supreme Court noted on an earlier occasion, "a significant percentage of murders of police officers occurs when the officers are making traffic stops." *(United States v Robinson,* 414 US 218, 234, n 5.) We fail to discern any appreciable difference between driver and passenger in the degree of risk posed to the safety of a police officer. Hence, police officers are not required, as defendant contends, to treat

---

* Defendant argues that the viewing of an empty gun holster provided the justification for ordering the occupants out of the car. The court, however, made it eminently clear that the presence of the holster made the order "even more justifiable", but that the order was lawful in the absence of such circumstance. *(People v Livigni,* 88 AD2d 386, 388.)

passengers differently from the driver, and we reject the argument that the circumstances which render it permissible to order a driver out of a car after a lawful stop for a traffic violation are not equally applicable to a passenger. Before a police officer orders a passenger out of a car, he is not required to have, separate and distinct from the underlying traffic violation which serves as the predicate for the stop, an articulable basis to support a suspicion either as to the existence of criminal activity by the passenger or that he poses a threat to the officer's safety.

In this case, the police observed the McLaurin car moving at a speed significantly in excess of the posted limit. Such conduct justified the stop. Once the car was legally stopped, the officers were permitted not only to order the occupants out of the car but to open any door to secure their safety or effectuate that order. In requesting that defendant step out of the car, Officer Benson took the minimum steps necessary to secure his safety and that of his fellow officer. There was no credible testimony elicited that he ever searched the vehicle or defendant prior to viewing the gun in the pocket of defendant's jacket. Thus, given the circumstances confronting him, Officer Benson's actions were reasonable.

Accordingly, the judgment of the Supreme Court, Bronx County (Harold Silverman, J.), rendered October 28, 1983, convicting defendant of criminal possession of a weapon in the third degree and sentencing him to a term of one year in prison should be affirmed and defendant directed to surrender.

KUPFERMAN, J. P. (concurring). The matter of whether a passenger in an automobile, stopped for speeding, may be required to exit the car is a question deserving high court consideration. I concur in the result in this matter, because the stop occurred near to midnight in an area with abandoned buildings and, on balance, the police officers would have a natural feeling of trepidation. Whether the result should be the same in broad daylight in a busy intersection is problematical. (Cf. *People v Bronston,* 68 NY2d 880.)

Ross, CARRO and ASCH, JJ., concur with SULLIVAN, J.; KUPFERMAN, J. P., concurs in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered on October 28, 1983, unanimously affirmed.