OPINION OF THE COURT
Gerald Sheindlin, J.
Defendant, Lamaruin Poteat, is charged with the crime of criminal possession of a weapon in the third degree. Defendant moves, pursuant to Mapp v Ohio (367 US 642 [1961]) for suppression of a weapon seized from his person, on the *594 grounds that such evidence was obtained in violation of his constitutional rights.
A Mapp hearing was held before this court to determine the admissibility of the evidence. At that hearing, the sole witness to testify was Police Officer Steven Bonano. On the basis of the evidence adduced at the hearing as well as the memoranda of law submitted by each counsel, the court concludes that defendant’s motion to suppress must be granted in its entirety. In doing so, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
Officer Bonano’s testimony is found to be trustworthy, candid, credible and uncontradicted. On March 2, 1986 at approximately 3:43 a.m. in Bronx County, Police Officer Bonano and his partner, Police Officer Erosa, were in uniform on patrol in a marked radio car. Police Officer Bonano observed a gypsy cab with two passengers in the rear seat traveling east on Burnside Avenue. The officers proceeded after the cab and pulled it over.
Bonano testified that the cab had committed no traffic infraction, nor was there any hint or suggestion of illegal or suspicious activity. In stopping the cab, Officer Bonano was acting in accordance with a written directive issued by the Bronx Borough Chief to all radio cars assigned to patrol between midnight and 8:00 a.m. requiring them, during their tour to randomly stop any two cabs with passengers. The purpose of this program was to reduce the number of cab robberies in The Bronx.
The court notes that the actual written directive was never offered into evidence at the hearing, nor made part of the record. Therefore, the written directive will not be evaluated or considered by the court. The submission of the written directive as part of the People’s memorandum of law is inappropriate and will not serve to incorporate it as evidence into the record. (See, Terner v Terner, 44 AD2d 702 [1974].)
After stopping the cab, Police Officer Bonano approached the vehicle and asked the driver for his license, registration and insurance card. He simultaneously directed the defendant and the other passenger seated in the rear to raise their hands and place them on the interior partition of the cab.
As a direct result of the defendant raising his hands, Police Officer Bonano was thereupon able to observe the handle of a *595 gun protruding from the left coat pocket of the defendant. Bonano alerted his partner, who immediately removed the defendant from the vehicle and recovered a .32 caliber revolver from his pocket. The defendant was placed under arrest.
CONCLUSIONS OF LAW
On a motion to suppress physical evidence, the People have the burden of going forward to show the legality of the police conduct in the first instance. Once this burden is met, the defendant bears the burden of proving its illegality by a preponderance of the evidence. (People v Berrios, 28 NY2d 361 [1971]; People v Malinsky, 15 NY2d 86 [1965].)
An investigative stop of an automobile on a public roadway is a seizure within the meaning of constitutional limitations. (People v Ingle, 36 NY2d 413, 418 [1975].) As the stop of the automobile interferes with the travel and the privacy of the car’s occupants, the Court of Appeals has held that a particular car may not be singled out and stopped unless the stop is conducted pursuant to " 'nonarbitrary, nondiscriminatory, uniform’ highway traffic procedures, or when there is specific cause or, at least, reasonable suspicion that a motorist is about to violate a law.” (People v Sobotker, 43 NY2d 559, 563 [1978]; People v Ingle, supra; Pennsylvania v Mimms, 434 US 106 [1977].)
The instant record is devoid of either a nonarbitrary, nondiscriminatory, uniform procedures or cause " 'based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion” ’ ” (People v Sobotker, supra, at 563; People v Williams, 79 AD2d 147 [1981]; cf., People v McLaurin, 120 AD2d 270 [1st Dept 1986]).
Police Officer Bonano’s sole reason for stopping the cab was the directive requiring the random stop of two cabs per tour.
This procedure stands in sharp contrast to stops conducted for the purpose of detecting and deterring persons operating motor vehicles under the influence of alcohol. In upholding the legality of this type of stop, the Court of Appeals stressed the specific procedures devised, and the manner in which the particular roadblock-stops were being operated, emphasizing the uniform procedures which afforded little discretion to operating personnel (People v Scott, 63 NY2d 518 [1984]; Delaware v Prouse, 440 US 648 [1979]).
*596 In Scott (supra, at 525) the court noted that: "[Individualized suspicion is not a prerequisite to a constitutional seizure of an automobile which is 'carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers’
Similarly, in People v John BB. (56 NY2d 482, 488 [1982]) the Court of Appeals found that the evidence was sufficient to establish that the stop was made "pursuant to a nonarbitrary, nondiscriminatory and uniform procedure, involving the stop of all vehicles located in the heavily burglarized area”.
Nonetheless, a stop such as the one described herein could be reasonable, if carried out in a brief noncoercive, uniform manner. For example, if the police officer informed the driver and passengers of the purpose of the stop before requesting documents, it is clear that the occupants of the vehicle would not view this brief respectful investigative approach as coercive or as a form of harassment. However, the stop as performed in this case, without explanation, coupled with police directions to innocent passengers, which significantly interfered with their freedom, is clearly oppressive and unlawful.
In People v De Bour (40 NY2d 210) the court noted the need for a careful balancing in evaluating police functions.
"Consequently unrealistic restrictions on the authority to approach individuals would hamper the police in the performance of their other vital tasks * * *
"We have consistently recognized the obligation of policemen to render assistance to those in distress * * * However, when police officers are engaged in their criminal law enforcement function their ability to approach people involves other considerations and will be viewed and measured by an entirely different standard of reasonableness * * *
"Due to the tendency to submit to the badge and our belief that the right to be left alone is 'too precious to entrust to the discretion of those whose job is the detection of crime’ (McDonald v United States, 335 US 451, 455), a policeman’s right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter.” (Supra, at 218-219.)
In evaluating the particular problem involved in this case, that is crime prevention, the court noted: "One aspect of law enforcement warrants particular mention and that is the area of crime prevention. Since this function is highly susceptible to subconstitutional abuses it will be subject to the greatest *597 scrutiny; for whereas a policeman’s badge may well be a symbol of the community’s trust, it should never be considered a license to oppress” (supra, at 220).
Here the evidence establishes a degree of discretion vested in Police Officer Bonano that is virtually limitless. The record reveals that the procedures followed were at best vague and arbitrary. One could hardly say that the plan as exercised, embodied explicit, neutral limitations on the conduct of the individual officers. (See, People v Scott, supra.)
As the necessary predicates to stop a vehicle, as set forth in People v Ingle (supra) are absent, the stop of the cab, as performed, is held to be illegal and unwarranted. Therefore, anything seized as a result of the illegal stop must be suppressed as the "fruits of the poisonous tree” (see, People v Ingle, supra).
The People argue that the defendant does not possess standing to challenge the legality of the search and seizure (Rakas v Illinois, 439 US 128 [1978]). This argument is inapplicable to this case. Here the gun was not recovered as a result of a search of the vehicle, but from the defendant’s person. Therefore, the defendant does in fact have standing to contest this seizure (People v Sutton, 91 AD2d 522).
Even if the court were to assume that the initial stop of the cab was legal, the weapon must still be suppressed.
In People v Harrison (57 NY2d 470, 476 [1982]) the Court of Appeals noted: "It should be evident * * * that if the police escalate the encounter as they did here by exercising restraint over the individual as opposed to his vehicle, even out of concern for their safety, a more substantial predicate is required. In other words, before the police can forcibly or constructively stop an individual as was done here by the order to remain in the car there must be some articulable facts, which initially or during the course of the encounter, establish reasonable suspicion that the person is involved in criminal acts or poses some danger to the officers” (see also, People v Johnson, 102 AD2d 616 [1984]).
Here it was the actions of the officer in ordering the defendant to raise his hands that caused the gun to be observed. There were no articulable facts to justify this significant interference with the defendant’s freedom of movement.
The People having failed to satisfy the initial burden, the motion to suppress the revolver is granted.