(December 17, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL GREENE, Appellant.—Judgment of the Supreme Court, Bronx County (Robert G. Seewald, J., at suppression hearing, plea and sentence), rendered February 11, 1986, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him, as a second felony offender, to a term of 3½ to 7 years, is reversed, on the law and facts, defendant's motion to suppress the evidence seized granted, and the indictment dismissed.

Lieutenant Robert DiMartini (then a sergeant) and Police Officers Joseph Cialone and Bartley Porzio, while on patrol in an unmarked car, observed a vehicle pass through a red light at 176th Street and Webster Avenue, in The Bronx. The time was 11:30 in the evening and the locale was described by the officers as a "high crime" area in which numerous arrests for robbery, drugs, stolen cars and other crimes had been made.

After stopping the car under an underpass of the Cross Bronx Expressway, DiMartini walked to the passenger side of the car and Cialone and Porzio went to the driver's side and the rear of the vehicle, respectively. Cialone asked the driver to step out of the car. The driver did so and walked to the rear

---

of the vehicle where Cialone asked him for the papers for the vehicle.

According to the testimony at the suppression hearing, as DiMartini walked up to the auto, defendant, who was seated in the front next to the driver, stepped out and pushed DiMartini in the chest, in an attempt to get past him. It should be noted that Officer Cialone, in statements before the Grand Jury and to an Assistant District Attorney, had initially stated that defendant tried to "squeeze" past DiMartini and "run by him". DiMartini grabbed defendant by the shoulders and, noticing that the two passengers in the rear seat were moving and might have a weapon, handed defendant to Cialone.

Officer Cialone noticed that defendant was nervous. He told him to relax, placed him on the rear of the car and patted him down, feeling a large bulge at defendant's waistband and pulling out a loaded gun. The other two passengers in the rear were also "frisked" but no other weapons were found.

A subsequent check of the license plate showed that the car was not stolen and the officers did not issue a summons to the driver for passing the red light.

As the officers found out later, the driver was operating a limousine service and the two passengers in the back seat were one fare while defendant was a separate fare. Defendant did not know either of the passengers in the rear or the driver.

A suppression hearing was held regarding the admissibility of the gun and certain statements made by defendant after his arrest, at which Lieutenant DiMartini and Officer Cialone testified to the facts set forth above. The suppression court denied the motion to suppress evidence of the gun, crediting the testimony of the police and finding the actions taken by them to be reasonable and necessary to insure their safety. Defendant thereafter pleaded guilty.

We find that, contrary to defendant's contention, the initial stop of the vehicle in which defendant was a passenger, for passing the red light, was not a mere "pretext stop" (see, People v Prochilo, 41 NY2d 759, 761-762). The hearing court fully credited the officers' testimony that they stopped the vehicle because of the traffic infraction and not for any other improper or irrelevant purpose. The record herein supports that finding of the hearing court, which, as made by the trier of fact, must be accorded great weight (People v Siu Wah Tse, 91 AD2d 350, 352, lv denied 59 NY2d 679).

However, the forcible detention and frisk of defendant, upon his exiting the vehicle and attempting to leave, violated defendant's constitutional and statutory rights against unreasonable search and seizure (US Const 4th, 14th Amends; NY Const, art I, § 12; CPL 140.50) and, consequently, the gun recovered as a result of this violation must be suppressed.

The police herein were entitled to order the driver of the vehicle out and to question him *(see, Pennsylvania v Mimms,* 434 US 106). In addition, they were justified, as a safety measure, in ordering defendant, a passenger, out of the car (although they did not do so) *(People v Livigni,* 88 AD2d 386, *affd on opn below* 58 NY2d 894; *People v McLaurin,* 120 AD2d 270). However, "[I]f the police escalate the encounter as they did here by exercising restraint over the individual as opposed to his vehicle, even out of concern for their safety, a more substantial predicate is required. In other words, before the police can forcibly or constructively stop an individual * * * there must be some articulable facts, which initially or during the course of the encounter, establish reasonable suspicion that the person is involved in criminal acts or poses some danger to the officers" *(People v Harrison,* 57 NY2d 470, 476; *see, People v Castro,* 129 AD2d 406).

There was no showing here of a reasonable suspicion on the part of the police that defendant was committing, had committed or was about to commit a felony or misdemeanor (CPL 140.50). Defendant's attempt to leave by pushing past then Sergeant DiMartini, and his apparent nervous demeanor (observed only *after* his seizure), did not, standing alone, constitute reasonable suspicion. Absent other articulable indicia of criminal activity, there was nothing here to warrant the forcible restraint of defendant *(see, People v Leung,* 68 NY2d 734, 736).

Since there was no reasonable suspicion justifying detention, the pat-down frisk of defendant was also unlawful *(People v De Bour,* 40 NY2d 210, 223). Concur—Asch, Milonas and Rosenberger, JJ.

Murphy, P. J., and Sandler, J., dissent in a memorandum by Sandler, J., as follows: When we apply common sense and the lessons of human experience to the totality of the facts presented, it seems to me clear that the police officers had sufficient reason to suspect the defendant of criminal activity to justify his detention, and sufficient reason to be concerned for their safety, to justify the frisk that resulted in the finding of the gun. *(See,* CPL 140.50 [1], [3].)

The critical testimony was presented by Lieutenant DiMartini, whose testimony was fully, and justifiably, credited by the Hearing Judge. Lieutenant DiMartini testified that after the vehicle was stopped at 11:30 P.M. on March 6, 1985, in an underpass on Webster Avenue, he walked to the passenger side of the vehicle, Police Officer Cialone went to the driver's side, and Police Officer Porzio stayed at the rear of the stopped vehicle. Although the witness had said nothing to the defendant, who was seated in the front passenger seat of the car, the defendant got out of the car and "at that point he tried to push me aside and flee * * * With his hands, he hit me in the chest area and just tried to shove me out of the way."

In response to questions from the court, Lieutenant DiMartini testified that the defendant pushed him in the chest and "started to run past me or attempted to run past me." At that point, the witness grabbed the defendant by the shoulders. The witness observed motions on the part of the occupants in the rear seat of the vehicle and, fearful that they might have a weapon, told Officer Cialone to hold the defendant, and then ordered the two rear occupants out of the car. Before they stepped out of the car, Officer Cialone reported that the defendant had a gun.

In relevant part, Officer Cialone testified that as he was asking the driver to produce his papers for the vehicle, he saw the defendant stepping out of the vehicle "making a sharp right turn and sort of pushing Lieutenant—tried to push the lieutenant out of the way." Lieutenant DiMartini grabbed the defendant and told the officer to "watch him. He's nervous", and mentioned something about movement in the back seat of the vehicle. The officer guided the defendant to the rear of the car, observing that "he was very, very nervous." The officer told the defendant to relax. He testified: "I patted him down because I had concern at that point. I was concerned for my safety, watching the way he appeared to be to me, being visibly shaken, that he tried to get away from the Lieutenant, and because there was certain movement in the back seat of the car, I wanted to make sure that I was in control of the situation. When I did pat him down, I felt a very large bulge in his waistband area, which I immediately pulled it out and saw that it was a gun."

Undeniably there are circumstances in which a passenger in a vehicle stopped for a traffic violation might reasonably choose to leave the car, and the area, without giving rise to any justifiable suspicion of criminal activities. The passenger

may be within walking distance of his destination. Or he may be in a hurry to go some place and decide to look for a cab to bring him to his intended destination. The time and location of the stop in this case make it less likely that defendant was leaving for these appropriate reasons than in many other situations that might be envisaged. What is particularly striking about the defendant's movement is that he apparently said nothing by way of explanation to the driver of the vehicle. It is surely unusual in ordinary experience for a passenger to leave a vehicle stopped for a traffic infraction without some explanatory comment to the driver of the car.

At a minimum, a departure without some such comment at the time and place with which we are concerned would normally justify some interest on the part of the police officers. In this case, this unusual behavior was accompanied by the defendant shoving one of the police officers out of the way in what appeared to be an effort, not just to leave the area, but to flee from it. This is surely not normal behavior for a passenger in a vehicle stopped for a traffic infraction.

Except for the disagreement of my colleagues, I should have thought it quite clear that the police officers could reasonably suspect criminal activity on the part of a passenger in a vehicle stopped for a traffic infraction at 11:30 P.M., who, though not spoken to by the police officers, and without making any comment to the driver of the car, shoved a police officer out of the way in what appeared to be a desperate effort to flee the area of the stopped car while an officer was checking the driver's papers.

Accordingly, the judgment of the Supreme Court, Bronx County (Robert G. Seewald, J., at suppression hearing and plea), rendered February 11, 1986, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him, as a second felony offender, to a term of 3½ to 7 years, should be affirmed, and the defendant's motion to suppress the evidence seized should be denied.