Alexander, J.
(dissenting). Although the Supreme Court has not, to date, pronounced so total an evisceration of the Fourth Amendment’s protections against warrantless searches and seizures, the majority of this court sweeps away entirely those protections in respect to the occupants of a lawfully stopped vehicle, proclaiming that the seizure of such occupants is per se reasonable based upon the risks inherent in "police/civilian vehicle encounters” (majority mem, at 775). Because the citizens of our State are entitled to every bit as much protection under the Fourth Amendment as that mandated by the Supreme Court, I dissent and vote to grant defendant’s suppression motion and to reverse his conviction.
The facts adduced at the suppression hearing reveal that at approximately 1:00 p.m. on January 15, 1985, plain-clothes Police Officers James Reinhold and Jack Travitz, while on anticrime patrol in Brooklyn in an unmarked patrol vehicle, observed an orange automobile driving in a northbound direction on Bedford Avenue. The two occupants of the automobile exchanged glances with the officers who then proceeded to follow the car in their patrol unit. Reinhold testified that he noticed that the driver repeatedly checked his side-view and rear-view mirrors and that both the driver and passenger appeared animated in their conversation and body movements. When the driver made an illegal right turn onto Carroll Street from the left lane of Bedford Avenue the officers signaled for the car to pull over and stop. The officers exited their vehicle and approached the Ford, Travitz from the driver’s side and Reinhold from the passenger’s side. Upon reaching the passenger’s side, Reinhold ordered defendant out of the car. Only after defendant had complied with this direction did Reinhold observe the butt of a handgun protruding from under the right front passenger seat. Both defendant and the driver were then immediately placed under arrest.
In Pennsylvania v Mimms (434 US 106), the Supreme Court held that a police officer, upon stopping an automobile for a traffic infraction, may ask that the driver step out of his car before pursuing an investigation. In that case, the driver was stopped for an expired license plate. He was asked to step out of the car to produce his license and registration and as he exited the vehicle, the police observed a bulge under his jacket. The subsequent frisk uncovered a loaded .38 caliber revolver and the driver was immediately arrested. The court upheld the right of the police to order the driver out of the car based in large part on the perceived "inordinate risk *777 confronting an officer as he approaches a person seated in an automobile” (id., at 110). The legitimate safety concerns of police officers, it was concluded, outweighed the "de minimis” additional intrusion on a lawfully detained driver’s liberty occasioned by a request that he exit his vehicle (id., at 111). As put by the Supreme Court: "The police [had] already lawfully decided that the driver [would] be briefly detained; the only question [was] whether he [would] spend that period sitting in the driver’s seat of his car or standing alongside it” (id., at 111). The Mimms court was careful to emphasize, however, that it was holding only that the driver of a lawfully stopped vehicle may be ordered out of his car and that it was not deciding whether other intrusive police actions could be taken against the passengers of a lawfully stopped automobile (id., at 110-111, nn 5, 6).
Later, in People v Class (475 US 106),[1] the Supreme Court clarified the scope of its holding in Mimms, unambiguously stating that its prior decision was predicated on the following three factors: "the safety of the officers was served by the governmental intrusion; the intrusion was minimal; and the search stemmed from some probable cause focusing suspicion on the individual affected by the search” (id., at 117-118 [emphasis supplied]). In respect to the third factor, the court stressed that in Mimms, "the officers had personally observed the seized individual in the commission of a traffic offense before requesting that he exit his vehicle” (id., at 117).
In the instant case, no such individualized suspicion of wrongdoing existed in respect to this defendant.[2] Indeed, his *778 initial detention was simply the unavoidable by-product of the lawful stop of the vehicle which, in turn, was predicated solely on a traffic infraction committed by the driver. Conspicuously absent from this record is any reasonable "combination of additional factors that warranted apprehension as to the defendant passenger” (People v McLaurin, 70 NY2d 779, 781). The People’s contention that Officer Reinhold was justified in fearing defendant based on his prior observations of conversation and body movements borders on the absurd. It is common for the occupants of automobiles to engage in animated conversation and to gesticulate as a way of emphasizing certain points. It is an equally common experience for occupants to move around in an exaggerated fashion to keep time to music that may be playing on the car radio. Surely such everyday conduct cannot serve as the predicate for intrusive police action. Similarly, the circumstance of a driver repeatedly checking his mirrors, conduct ordinarily associated with the safe and proper operation of a motor vehicle, provides no basis for the subject intrusion on defendant. Indeed, there exists absolutely no justification other than the traffic infraction committed by the driver for Reinhold’s decision to order defendant out of the car. Yet, as should now be clear from the Supreme Court’s analysis in Class, although the safety rationale of Mimms may be applied appropriately to justify the incremental intrusion on the liberty of the driver — a request to step out of the car — such request directed at a passenger is impermissible absent "some probable cause focusing suspicion” on the person seized (475 US, at 118; see, 3 LaFave, Search and Seizure § 9.4 [a], at 514-515 [2d ed 1987]; cf., People v McLaurin, 70 NY2d 779, supra; People v Livigni, 58 NY2d 894, affd for reasons stated below 88 AD2d 386). In affirming defendant’s conviction, the majority has inexplicably ignored this most recent interpretation of Mimms and, indeed, has extended that case so as to render the occupants of a lawfully stopped vehicle vulnerable to what is plainly an unconstitutional intrusion by the police. Accordingly, I would grant defendant’s motion to suppress the handgun discovered after defendant was unlawfully ordered to exit the automobile and reverse the conviction.
Chief Judge Wachtler and Judges Simons, Hancock, Jr., and Bellacosa concur; Judge Alexander dissents and votes to reverse in an opinion in which Judges Kaye and Titone concur.
*779 Order affirmed in a memorandum.

. The issue in Class was whether the Fourth Amendment permitted a police officer, upon stopping an automobile for a traffic infraction, to reach into the interior of the car and move some papers on the dashboard that were concealing the car’s vehicle identification number. In upholding the police action, the Supreme Court reversed a decision of this court holding such a search to be a violation of both the Federal and State Constitutions (People v Class, 63 NY2d 491). On remand, we adhered to our prior determination, basing our decision on article I, § 12 of the State Constitution (People v Class, 67 NY2d 431).

. The majority’s recitation of the applicable standard of review in cases such as this is not, as the majority apparently recognizes, dispositive of the issue presented — namely, whether on any reasonable view of the facts adduced at the suppression hearing the action of the police officer in ordering defendant out of the car was justified. It is fundamental that "when an issue arises as to the standard by which [reasonable suspicion] is measured — the minimum showing necessary to establish [reasonable suspicion] — a question of law is presented for review” (People v McRay, 51 NY2d 594, 601; Cohen and Karger, Powers of the New York Court of Appeals § 198, at 742 [rev ed]).