■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL MARTINEZ, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IRMA GARCIA, Appellant.—Judgments, Supreme Court, New York County (Leslie Snyder, J.), rendered October 23, 1986, convicting defendants, upon their pleas of guilty, of criminal possession of a controlled substance in the first degree and sentencing them to indeterminate terms of imprisonment of from 15 years to life, unanimously reversed, on the law and the facts, the judgments vacated, the first, second and fourth counts of the indictment dismissed, and the matter remitted to Supreme Court on the third and fifth counts of the indictment.

Defendants appeal from the judgments entered upon their guilty pleas convicting them of criminal possession of a controlled substance in the first degree. They pleaded guilty to the class A-1 felony, the highest count in the indictment, in full satisfaction of the entire indictment which also charged them with the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a weapon in the third degree, criminal possession of a weapon in the fourth degree and criminally using drug paraphernalia in the second degree.

We agree with the Supreme Court that the stop of defendants' van for a traffic infraction and the seizure of a weapon and drug paraphernalia therefrom were lawful (see, People v McLaurin, 70 NY2d 779; People v Livigni, 88 AD2d 386, affd 58 NY2d 894, rearg denied 58 NY2d 1114). However, the subsequent entry and search of defendants' apartment without out a warrant was improper since the People failed to demonstrate the existence of exigent circumstances sufficient to justify the warrantless entry and search. Therefore, the Supreme Court erred in denying defendants' motion to suppress the evidence seized from their apartment.

At the combined *Mapp/Huntley* hearing, Officer Frank Bose testified that he had received information that a cocaine distribution network was operating out of an apartment located at 507 East 11th Street, Manhattan, and that the apartment was occupied by a woman named "Blondie" and a heavy-set hispanic man of medium height. The officer was also told that the occupants of the apartment owned a dark brown, custom-decorated van which they used to transport and package drugs. A gun was also purportedly seen in the van.

On August 15, 1985, Officer Bose, accompanied by Sergeant Robert Barchiesi, saw the brown van parked opposite the building at 507 East 11th Street. Bose watched as the van pulled away from the curb without signaling in violation of section 1163 of the Vehicle and Traffic Law and then drove through a red light. The officers pulled the van over and asked the driver, defendant Rafael Martinez, for his license, registration and insurance card. When Martinez did not produce the requested documents, Bose opened the door of the van and ordered Martinez out. As Martinez stepped down, Bose saw the handle of a gun protruding from beneath a rubber mat on the floor in front of the driver's seat. Bose drew his gun and pushed Martinez against the van.

After seizing the fully loaded .32 caliber revolver, the officers ordered the three male passengers and defendant Irma Garcia out of the van. When Garcia tried to take a straw shopping bag with her, the officers told her to leave it in the van. When Bose entered the vehicle to check for other occupants, he saw thousands of small envelopes known as "pyramid papers", rolls of scotch tape, rubber bands and a large plastic package in a shopping bag on the floor next to the right rear passenger seat. Inside the straw bag Garcia had tried to take with her was an envelope containing $845 in cash.

A crowd of 20 to 30 people had gathered outside the van and a second patrol car with two police officers had also arrived on the scene. Officer Bose asked Garcia to whom the money in the straw bag belonged and she said that it was hers. When asked where she got the money, she told him it came from her business. However, she did not answer when the officer asked her what business she was in. Someone in the crowd spoke to Garcia in Spanish and she replied. Officer Bose, who did not speak Spanish but had some knowledge of Spanish vocabulary, recognized two of the words he heard Garcia say: "perico", a term for cocaine, and "basura", which the officer understood to mean "to dispose of, to put in the

garbage". From these two words the officer concluded that Garcia had told someone in the crowd to put cocaine in the garbage.

The officer then saw a young man leave the crowd and walk rapidly in the direction of 507 East 11th Street. Although Officer Bose had not seen to whom Garcia had spoken, he turned to Sergeant Barchiesi and said, "I think they're going to dump some coke." The sergeant told him to follow the young man, which he did. Just as the youth reached the building he turned and saw Officer Bose following him. He then began to run, entering 507 East 11th Street, and Officer Bose ran after him. Bose saw the young man going up a staircase as he entered the building but lost sight of him when the youth reached the landing. Bose then heard a banging noise and continued up the stairs until he saw the young man entering an apartment, later determined to be defendants' residence, on the top floor. The young man tried to slam the door behind him but Bose managed to prevent it from being closed and followed the youth into the duplex apartment. When the young man dashed up the stairs connecting the two floors of the apartment, Bose lost sight of him again. While checking the several rooms on the upper floor, Bose noticed an open window leading to a fire escape.

Sergeant Barchiesi joined Officer Bose and the two went downstairs to the lower floor of the apartment where they checked some of the rooms. As they prepared to leave the apartment, they noticed a mirrored valet with coat hooks and a bench against a wall about three feet from the front door. An open, brown grocery bag with an uncovered shoe box protruding from the top was on the bench of the valet. Inside the shoe box were more than 1,500 open pyramid papers, many of which contained white powder. Inside the grocery bag Officer Bose found $923 in cash and a list of names and numbers which the officer believed to be a record of narcotic transactions. A .25 caliber automatic weapon was found next to the bag and a loaded .30 caliber carbine clip was on the shelf below.

The record fails to support a finding of exigent circumstances sufficient to justify the warrantless entry and search of defendants' apartment. The officer had not seen to whom Garcia addressed her remarks nor had he fully understood what she had said. Although the young man was the only one to leave the crowd of onlookers after Garcia spoke, and the officer knew that drug-related activities were being conducted at 507 East 11th Street, there is no indication that he knew

which apartment belonged to defendants or if the apartment the young man entered was theirs, his own, or someone else's. The officer was not in "hot pursuit" of a suspect believed to be in possession of destructible evidence *(cf., United States v Santana,* 427 US 38; *see, People v Levan,* 62 NY2d 139), but rather, followed an individual into an apartment without knowledge of the person or premises' connection to defendants. Such tenuous connection failed to meet the People's burden of proving the existence of exigent circumstances sufficient to justify the warrantless entry into the apartment *(People v Knapp,* 52 NY2d 689). Since the warrantless entry into defendants' apartment had no prior justification, the items seized therein should have been suppressed as the fruit of that illegality *(People v Knapp, supra; People v Lott,* 102 AD2d 506).

We have considered and rejected the other issues raised by defendants. Concur—Sullivan, J. P., Milonas, Rosenberger, Ellerin and Rubin, JJ.